576     APPELLATE COURTS OF ILLINOIS.

VOL. 100.]     Donk Bros. Coal & Coke Co. v. Stroff.

---

### Donk Bros. Coal & Coke Co. v. Josephine Stroff.

1. MINES AND MINING—*What Is Not Compliance with Statute in Regard to Props.*—That there may have been props somewhere in the mine, is not a substantial compliance with the statute that they were at the "usual place," particularly when the miner knows nothing about them.

2. SAME—*When Contributory Negligence Does Not Bar Recovery Under Statute.*—A miner who is guilty of contributory negligence can recover under the act for the protection of miners, if the proximate cause of the injury is the willful failure of the mine manager to obey the provisions of the statute, in reference to the furnishing of props.

3. SAME—"*Miners*" *Act Is a Police Regulation.*—The "miners" act is a police regulation, passed in obedience to a constitutional provision of this State, and by the statutes and the decisions of the courts, a willful failure to obey the provisions of the statute has all the force of wanton and intentional injury in contemplation of law.

Trespass on the Case.—Death from negligence under "miners" act. Appeal from the Circuit Court of Peoria County; the Hon. WILLIAM HARTZELL, Judge, presiding. Heard in this court at the August term, 1901. Affirmed. Opinion filed March 3, 1902.

WISE & McNULTY, attorneys for appellant.

BURTON & WHEELER, attorneys for appellee; NEUSTADT & HADLEY, of counsel.

MR. JUSTICE BIGELOW delivered the opinion of the court. Appellee, as widow of Frank Stroff, deceased, brought

this action on the case, for the benefit of herself and her minor daughter, against appellant, a corporation, engaged in coal mining.

The action is based on section 16, of chapter 93, Rev. Statutes, 1899, entitled " Miners." It is averred in the first count of the declaration, in substance, that on the 17th of October, 1900, appellant was the owner of and was operating a coal mine, near Collinsville, in Madison county, in this State; and had in its employ Frank Stroff, whose duty required him to load coal and perform other labor in the mine; that under the law it was the duty of appellant to supply a sufficient number of props, of suitable length and size, on the miners' cars at the usual place when demanded, so as to secure the roof of the mine from falling; that although Stroff had made demand for such props appellant willfully failed to deliver them, by means whereof Stroff was killed by a fall of slate from the roof of the mine, while engaged in the discharge of his duties.

The second count of the declaration is substantially the same, charging in addition, that the cause of Stroff's death was the willful failure of appellant to provide props as required by law. Appellant filed a plea of not guilty, on which issue was joined, and the cause tried by a jury, who returned a verdict for appellee for the sum of $3,000; and after overruling a motion for a new trial, the court rendered judgment on the verdict. Appellant has brought the case here by appeal and asks this court, on various grounds relied upon by it, to reverse the judgment.

Section 16 above referred to is as follows :

" The mine manager shall instruct employes as to their respective duties, and shall visit and examine the various working places in the mine as often as practicable. He shall always provide a sufficient supply of props, caps and timber delivered on the miner's cars at the usual place when demanded, as nearly as possible, in suitable lengths and dimensions for the securing of the roof by the miners, and it shall be the duty of the miner to properly prop and secure his place with materials provided therefor."

On the material and vital issues of the case, there was a

578    Appellate Courts of Illinois.

Vol. 100.]    Donk Bros. Coal & Coke Co. v. Stroff.

sharp conflict in the evidence; the evidence on behalf of appellant tending to show that no props were in fact demanded by Stroff until the morning of the accident, and that Stroff was killed before there was time to get the props to the place where they were needed; on the other hand, the evidence for appellee tended to show that for some days prior to the accident both Stroff and his partner, Panz, had demanded that props be sent. Turentine, a cager at the mine, testifies that on the morning of the day before the accident, he heard Stroff's partner ask Thompson, the mine manager, for props. Thompson testified that no demand was made on him either by Stroff or Panz, except on the morning of the accident shortly before it happened.

We are unable, from a careful consideration of the evidence bearing on this particular issue, to say that the jury's finding was wrong. They saw the witnesses and listened to their testimony; they heard the arguments of able counsel on this particular issue, and they have given credence to appellee's contention; and besides, the trial court also saw the witnesses and observed their demeanor; the issue was again urged on the motion for a new trial, and the court approved the finding of the jury by overruling the motion and rendering judgment on the verdict.

Under all of these circumstances, to set aside the verdict would be to do an arbitrary act, not based on any reason satisfactory to this court.

It is insisted that there were three props on hand which were of suitable length and dimensions, which Stroff could have used, but he did not do so, and since the statute made it his duty to use such props, the injury was the result of his own negligence.

The evidence tends to show that three props were in the mine at the time of the accident, but the evidence fails to show that they were at the "usual place," as provided by the statute. Whether this language shall be interpreted that the "usual place" is the place where the mine manager leaves the props to the knowledge of the miner, or whether it means the place where the miner usually directs

the props to be placed for his convenience, it will not now be necessary to determine, because we have searched the record diligently for proof that Stroff knew something about those props, and we find no such evidence.

The evidence shows that the props were in a cross-cut, twenty feet away from the place of the injury, and this is not shown to have been the "usual place" where Stroff got props.  If either Stroff or Panz knew anything about these props, it seems strange they should have asked Thompson for props a short time before the accident; this request is admitted by Thompson.  We can not hold that because there may have been props somewhere in the mine, that such fact is a substantial compliance with the statute, particularly when the miner knows nothing about them.

In order to dispose of the remaining contentions of appellant, it will be necessary to quote the last paragraph of section 33 of said chapter 93 :

" For any injury to person or property, occasioned by any willful violations of this act, or willful failure to comply with any of its provisions, a right of action shall accrue to the party injured for any direct damages sustained thereby; and in case of loss of life by reason of such willful violation or willful failure as aforesaid, a right of action shall accrue to the widow of the person so killed, his lineal heirs or adopted children, or to any other person or persons who were, before such loss of life dependent for support on the person or persons so killed, for a like recovery of damages for the injuries sustained by reason of such loss of life or lives, not to exceed the sum of five thousand dollars."

It is insisted by appellant that Stroff went into a place where he knew there was imminent danger, and that Thompson, the mine manager, had told him not to go there; and that the place where the accident happened had been virtually abandoned for mining, at least temporarily, so far as Stroff was concerned; therefore, Stroff was guilty of such contributory negligence as prevents a recovery.

It must be admitted that Stroff went into a dangerous place and that he knew it was dangerous.  The evidence tends to show that the vein of coal was six feet thick; that above the coal was a vein of slate two feet thick; that

580　　Appellate Courts of Illinois.

Vol. 100.]　　Donk Bros. Coal & Coke Co. v. Stroff.

above the slate was a very thick vein of rock, which makes a good roof; that the slate was being constantly taken down because it was dangerous and not suitable for a roof. There had been a fall of slate at the place of injury on Tuesday, October 16th, the day before Stroff was killed. Thompson directed Stroff and Panz, his partner, to clean out this slate and make a sump for the water to run into. The slate was wet and so was the ground below the slate. Without any change in orders from Thompson, Stroff and Panz, after they had made the sump and cleaned out the slate, went to work in the entry where the accident happened; and upon this fact appellant bases its contention that the mine had been temporarily abandoned, so far as Stroff was concerned.

The evidence shows that Stroff was an experienced miner and knew his surroundings; he told Panz that the place was bad just a short time before the accident. We think there is abundance of evidence tending to show that Stroff was guilty of contributory negligence; however, we can not assent to the proposition that because Thompson did not change his orders so as to direct Stroff to go to work at mining in the entry, that the mine was abandoned as to that particular entry, so far as Stroff was concerned. Thompson knew that Stroff and Panz were partners (in the language of the miners, " buddies "); he admits that props were called for on the morning of the accident. He must have known that this call involved the men's going into the entry to mine coal. If the mine had been abandoned at that place, why did he not refuse to get props down there at all? His excuse is that he did not have time to get them there, thus showing that he clearly authorized the men to return to their task in the entry when they had cleaned up the slate and made the sump.

The single question left for determination, then, is whether a person who is guilty of contributory negligence can recover, under the act for the protection of miners, if the proximate cause of the injury is the willful failure of the mine manager to obey the provisions of the statute, in reference to the furnishing of props.

In the case of Catlett v. Young, 143 Ill. 74, the Supreme Court says that a willful violation of the statute is one "knowingly and deliberately committed." No further act of the will, guided by ill-feeling or wantonness, is requisite for a recovery in these cases. In Carterville Coal Co. v. Abbott, 181 Ill. 502, where the declaration alleged that the plaintiff was in the exercise of ordinary care, the court says that the averment is surplusage when the declaration counts on a willful violation of the law.

In a great number of the instructions given by the court at the instance of appellant, the jury were told under what circumstances the conduct of appellant could not be considered willful. With the general verdict for appellee in the record the jury must have found against the existence of the circumstances, and they must also have found the conduct of appellant to have been willful; and in this finding they were fully justified by the evidence.

We would not go farther with this opinion, except for the able argument made on behalf of appellant, in which it is insisted that neither the Supreme Court nor Appellate Courts have properly discriminated between the rules of "assumed risks" and that of "contributory negligence." That the rules are wholly unlike, except in the results which they bring about as against plaintiffs in ordinary cases of negligence, must be admitted. Counsel for appellant has shown, and we think with some appearance of success, that all the mining cases, where the Supreme Court has declared that contributory negligence would not bar a recovery, were really cases of assumed risks, citing Odin Coal Co. v. Denman, 185 Ill. 413; Carterville Coal Co. v. Abbott, *supra;* Pawnee Coal Co. v. Boyce, 184 Ill. 403.

Notwithstanding this fact we think that in a case where it is determined that the willful act of the defendant brought about the injury, contributory negligence has no place as a defense. When contributory negligence is predicated of any act, such a statement *ex vi termini* asserts mere negligence in reference to the same act.

" When the defendant's conduct is willful, it is no longer

582 · APPELLATE COURTS OF ILLINOIS.

VOL. 100.]          Donk Bros. Coal & Coke Co. v. Stroff.

negligence, and when the injury sustained by the plaintiff is the result of the wanton and willful act of the defendant, the question of plaintiff's contributory negligence as a defense can not arise." Beach on Contributory Negligence, Sec. 64.

This author also remarks that the term "willful negligence" is a misnomer, though he admits that the courts have used the expression to denominate certain conduct. (Ib., Sec. 62.) Of course it is not pretended that any act of appellant in the present case could, with any sense of propriety, be denominated "wanton." But the "miners" act is a police regulation, passed in obedience to a constitutional provision of this State. And by the statute and the decisions of the Supreme Court, as we interpret them, willful failure to obey the provisions of the statute have all the force of wanton and intentional injury in contemplation of law.

The damages provided in a case like this have been classed by the legislature with other liabilities for violations of the statute, under the generic term of penalties. No conduct of the deceased, short of willfully seeking the very injury of which appellee complains, can have the effect of barring a recovery, when the defendant's willful conduct has brought about such injury.

We are not prepared to say that the instructions given at the instance of appellee are correct; in fact, we think they are all open to criticism; but appellant's portion of the charge, given to the jury by the court, was so complete in points where appellee's charge was erroneous, that we are unable to see, under the evidence, which we have carefully considered, how appellant suffered on that account.

The refused instructions submitted by appellant are in conflict with the views herein expressed on the question of contributory negligence, and therefore we must hold that there was no error in refusing to give them to the jury.

Finding no error in the record as to the admission or rejection of evidence, or in giving or refusing instructions, or otherwise, that appears to us of sufficient importance to justify a reversal of the judgment, it is affirmed.