CHICAGO–COULTERVILLE COAL CO. v. FIDELITY & CASUALTY CO. OF NEW YORK.

(Circuit Court, W. D. Missouri, W. D. June 11, 1904.)

No. 2,880.

**1. INDEMNITY INSURANCE—DEFENSES—WAIVER.**

Plaintiff, after having been sued for injuries to its servant, notified defendant indemnity company, by which plaintiff was insured, thereof, and the latter, after having examined the claim, advised settlement, but denied liability on the ground that the injury was caused by plaintiff's breach of a statutory obligation within an exemption from liability contained in the policy. Defendant, however, agreed that its attorney should defend the suit, but plaintiff employed other attorneys, and, without relying on the opinion of defendant's counsel, settled the claim. *Held*, that defendant was not liable to reimburse plaintiff for the amount of the settlement, on the ground of an express or implied promise.

**2. MINES AND MINING—INJURIES TO MINERS—STATUTES—CONTRIBUTORY NEGLIGENCE.**

Where a miner was injured by reason of the mine owner's willful failure to maintain an open passageway around the landing place at the bottom of the shaft, as required by 4 Starr & C. Ann. St. 1902, pp. 845, 864, c. 93, §§ 2, 33, declaring that, for any injury occasioned by any willful violation of the act or willful failure to comply with its provisions, a right of action shall accrue to the party injured for any direct damages sustained thereby, the contributory negligence of such miner was no defense.

**3. SAME—NEW MINES.**

Where, long prior to an injury to a miner who was struck by a descending cage in a shaft, the owner of the mine had complied with 4 Starr & C. Ann. St. 1902, p. 845, c. 93, § 2b, requiring a passageway to be constructed 14 feet wide around the bottom of the shaft, but, by reason of a cave-

¶ 2. See Master and Servant, vol. 34, Cent. Dig. §§ 670, 671.

in, the passage had become blocked and obstructed so that a man could get through the passageway only by crawling over the rock and débris, and then by squeezing through a narrow passage, which condition existed for about six weeks before the injury, whereas the passage might have been cleared in two or three days' time, it was no defense to an action for injuries under the statute that the mine was in the early stages of development, as to which the statute ought not to apply.

4. SAME—POLICY—CONSTRUCTION.

An indemnity policy providing that insurer should not be liable for any loss or liability for injuries occasioned by the failure of insured to observe any statute affecting the safety of persons was not repugnant to a preceding general statement of the policy that insurer agreed to indemnify insured against loss from common-law or statutory liability to servants, etc.

5. SAME—WAIVER.

Evidence that the general agent of an indemnity company insuring plaintiff against loss by injuries to employés was informed that plaintiff was engaged in developing a new mine, and that it was not in full operation, but was not advised that the mine was being operated in violation of a statute of the state requiring a safe and commodious passageway around the bottom of the shaft, or that the passage constructed was then obstructed by a cave-in, was insufficient to establish a waiver of a provision in the policy exempting the insurer from liability for injuries caused by a failure of plaintiff to observe the statutory requirements.

H. L. McCune, for plaintiff.
Harkless, Crysler & Histed, for defendant.

PHILIPS, District Judge. This cause having been submitted for ...earing and determination to the court by written stipulation of the parties herein waiving a trial by jury, the cause was submitted on the pleadings and the evidence.

The suit is based on what is known as an "employer's indemnity policy," issued by the defendant company to the plaintiff company, beginning on the 1st day of October, 1902, at noon, and ending on the 1st day of January, 1903, at noon, "against loss from common law or statutory liability for damages on account of bodily injuries, fatal or non-fatal, accidentally suffered within the period of this policy by any employé of the assured while on duty at the places and in the occupations mentioned in the schedule hereinafter given, in and during the continuance of the work described in the said schedule." Willard A. Pettigrew, an employé of the assured, received an injury on the 23d day of October, 1902, while acting as cager and driver in the plaintiff's coal mine in Illinois, the mine covered by said policy; and to the March term, 1903, of the circuit court of Randolph county, state of Illinois, he brought suit against the said Chicago-Coulterville Coal Company to recover the sum of $5,000 as damages for said injuries. The petition in that case alleged, in substance, that the said coal company was operating a certain coal mine in Perry county, Ill., and was then engaged in mining, removing, and shipping coal from said coal mine; that said coal mine had a shaft in which a cage was lowered and raised, and from the bottom of said shaft were driven entries, and the plaintiff (Pettigrew) was then and there in the employ of said defendant in said coal mine as a driver and cager, his duties being to drive a mule in and along the entries in said coal mine, and to haul empty coal cars from the bottom of said shaft to where the men were mining and dig-

ging coal in the mine, and to haul loaded boxes to the bottom of the shaft and place them on the cage to be hoisted to the surface, and to remove the empty boxes from said cage; that there was a main entry driven south from the bottom of said shaft, and also a main entry driven north from the bottom of said shaft, and it became necessary for the plaintiff, in the performance of his said work, to go both into the south and the north entries. The petition then avers that it was then and there the statutory duty of the defendant to have and maintain at the bottom of said shaft, and at the place for caging therein, a safe and commodious passageway cut around said landing place, to serve as a traveling way by which men or animals might pass from one side of the shaft to the other without passing under or on the cage; that at the date aforesaid, and for a long time prior thereto, said defendant willfully failed and omitted to have and maintain a safe and commodious passageway around said landing place to serve as a traveling way by which men or animals might pass from one side of the shaft to the other without passing under or on the cage, but certain planks and timbers were placed on the "sump" in said shaft, and that plaintiff was compelled to pass over said timbers and under the cage in the performance of said work, and the injuries plaintiff received were caused directly and immediately by said willful failure of said defendant to have and maintain such passageway at the bottom of said shaft, as required by statute; that on the date aforesaid, while plaintiff was passing from the south side of said coal mine to the north side thereof on said planks or timbers over said "sump" and under said cage, the said cage came down upon the plaintiff, pinioning him to the said timbers on said "sump," crushing, mangling, and permanently injuring him (describing in detail the character of his injuries and the disabilities resulting therefrom). Notice of this suit was given by the assured to the insurance company, and it undertook through its attorney the defense thereof.

It appears from the correspondence between the insurance company and the assured that, after the said attorney and the agents of the insurance company had investigated the facts of the case, said attorney became impressed with the fact that said coal company had failed to comply with and observe the requirements of the state statute applicable to said mine, and that the action could not be successfully defended, even though the evidence might tend to show that the party injured had been guilty of contributory negligence at the time of the injury; and the opinion was expressed by said attorney that such defense would be unavailing under the statute in question, and suggested to the coal company the advisability of effecting a compromise settlement with Pettigrew. A number of letters passed to and fro between the parties touching this matter, but throughout it was stated on behalf of the insurance company that, if the injury to Pettigrew resulted from the employer's willful violation of the statute of the state in failing to construct and maintain a safe and commodious passageway around the bottom of said shaft for the use of said cager and driver, no liability of the insurer to the assured was admitted under the policy in question; that, if a compromise settlement should be effected between the coal company and Pettigrew, it should be on the understanding that the

coal company did not thereby waive any right it might have under the policy to look to the insurer for indemnity, and, on the other hand, that the insurer did not waive its right of nonliability to indemnify the assured under the terms of the policy. It further appears from this correspondence that the coal company did not wholly rely upon the opinion of the counsel of the insurance company respecting the probable indefensibility of Pettigrew's suit, for in one of its letters to the insurance company it stated that it had "employed good attorneys to look after our [its] interest," and it was after this, and presumably after its own "good attorneys" had looked after its interests, that it settled the claim of Pettigrew at $2,400, and the further sum of $18.55 on account of costs. This was done by the assured company after the assistant examiner of the insurance company had stated in his letter that:

"If, as our attorneys seem to think, the plaintiff's recovery in this case is based upon the violation of a statute, we would not be responsible to you for any judgment. Our policy is clear upon its face. We suggest that it would perhaps be better to effect, if possible, a reasonable settlement with the plaintiff's attorney, or with the plaintiff direct, and we agree that you by so doing will not thereby waive any right which you may have against us under your policy. Our differences could be taken up and disposed of either amicably or by suit at some later period. Of course, if the plaintiff's recovery, if any, is not based upon the violation of a statute, and it is otherwise covered under your policy, we would protect you in accordance with the terms of your contract. If you prefer to have our attorney continue the defense, we are willing to have him go ahead, and the expense in connection therewith, that is his fee, will be borne by our company."

It cannot, therefore, be maintained that the amount paid by the plaintiff in compromise of Pettigrew's claim is recoverable from the defendant on the ground of a promise, expressed or implied, by the defendant to reimburse the plaintiff the amount paid in settlement in any event. But looking to the clear intendment of the parties, gathered from their correspondence, and taking what seems to me to be a common-sense view of the situation, the plaintiff would be entitled to recover from the defendant the sum so paid to Pettigrew, unless the matters pleaded in defense are good in fact and law.

The policy contains the following provision, inter alia, under the head of "special agreements":

"(b) This policy does not cover loss from liability for injuries * * * occasioned by reason of the failure of the assured to observe any statute affecting the safety of persons."

Pursuant to the mandatory requirement of the Constitution of the state of Illinois, the statute of that state (4 Starr & C. Ann. St. 1902, c. 93, entitled, "Mines and Miners; Coal Mines and Subjects Relating Thereto—Miners"), section 2b, in force at the time of this accident, declared as follows:

"At the bottom of every shaft and at every caging place therein, a safe and commodious passage-way must be cut around said landing place to serve as a traveling way by which men or animals may pass from one side of the shaft to the other without passing under or on the cage."

By section 33 of this statute it is provided that:

"Any wilful neglect, refusal or failure to do the things required to be done by any section, clause or provision of this act, on the part of the person or

persons herein required to do them, or any violation of any of the provisions or requirements hereof, * * * shall be deemed a misdemeanor punishable by a fine not exceeding five hundred dollars, or by imprisonment in the county jail for a period not exceeding six months, or both at the discretion of the court. * * * For any injury to person or property, occasioned by any wilful violations of this act, or wilful failure to comply with any of its provisions, a right of action shall accrue to the party injured, for any direct damages sustained thereby."

The weight of the evidence taken in this case shows satisfactorily that the allegations of the petition in the said action of Pettigrew against the coal company herein were substantially true. When the said shaft was sunk by the coal company in the earlier part of its operation of this mine, it had constructed a passageway 14 feet wide around the west side of the shaft, connecting the north and south entries. By reason of a cave-in at this place, the passageway had become blocked and obstructed, so that the mule used by Pettigrew in his work could not pass over it, and a man could get through the passageway only by crawling or clambering over the rock and débris, testified to be from 2 to 5 feet high, and then by squeezing through a narrow passage of about 15 inches in dimensions between a post and the shaft on the northwest corner. This condition of the passageway had existed for about six weeks before Pettigrew's injury, which obstruction could have been cleared away by the operator in two or three days. The coal company knew that this passageway was thus blocked, and that to enable the driver to take his mule from one side to the other a passageway of timbers had been constructed over the "sump" or pit beneath the cage, and that in passing from one side to the other the mule and the employés were passing over this way, necessarily taking them beneath the cage. By constructing this provisional passageway it invited its employés to use it. Pettigrew received his injury by being caught under the west descending cage in attempting to pass over from one side to the other in the performance of his work.

It is the established construction of said statute by the Supreme Court of Illinois that, it having been enacted in compliance with the declared public policy of the state as defined in its fundamental law, the defense of contributory negligence and assumption of risk on the part of the person injured does not lie to an action founded on the willful failure of the mine operator to comply with the requirements of the statute. This question was thoroughly discussed by the highest court of Illinois in Carterville Coal Company v. Abbott, 181 Ill. 503, 55 N. E. 131, and followed in Western Anthracite Coal & Coke Co. v. Beaver, 192 Ill. 333, 61 N. E. 336. It is true that, to make out a case of liability on the part of the mine owner under this statute, it must be shown that his omission of duty was willful, and that the injury resulted directly therefrom. The term "willful" employed in this statute has been construed by the Supreme Court of Illinois in the case of Carterville Coal Company v. Abbott, supra. The court said:

"Where an owner, operator, or manager so constructs or equips his mine that he knowingly operates it without conforming to the provision of this act, he willfully disregards its provisions, and willfully disregards the safety of miners employed therein. Where such owner, operator, or manager willfully disregards a duty enjoined on him by legislation of this character, and places

in danger the life and limbs of those employed therein, he cannot say that, because one enters a mine as a miner with knowledge that the owner has failed to comply with his duty, he is guilty of contributory negligence."

The learned counsel for plaintiff sought in argument to evade the application of this statute to this instance by contending that this was a new mine, in the early stages of development, and that it ought not to be exacted or expected of a mine owner, in his relation of responsibility to his employé, to have the passageway in the prescribed condition during such experimental development. The evidence in this case shows that long prior to this accident, when the shaft was sunk and the levels started therefrom, the plaintiff complied with the statute by making a passageway 14 feet in width, and that in the fore part of September, 1902, the obstruction occurred from the cave-in, and that for six weeks the plaintiff left it in this condition, although it was prosecuting the work of development by hauling tons of coal from the extensions each day for merchandise. It was then engaged in operating a mine. The spirit as well as the letter of the statute made it imperative upon the plaintiff, as soon as it began to extend its lateral levels and to dig, haul, and dump the coal into the elevator crates, to provide this safe and commodious passageway for the cager and his mule. In Odin Coal Company v. Denam (Ill.) 57 N. E. 193, 76 Am. St. Rep. 45, the Supreme Court of Illinois, in speaking of this statute, said:

"Where a declaration against a mining company alleged that plaintiff's intestate came to his death by defendant's willful omission to comply with sections 6 and 8, it was proper to refuse to allow officers of defendant to testify that they intended to comply with the statute in good faith, since the word 'willful,' as employed in the declaration, did not involve a charge of wrongful intent, but only that the omissions were conscious acts of the mind, and not from mere inadvertence."

So it is held in Donk Bros. Coal Co. v. Stroff, 100 Ill. App. 576:

"The miners' act is a police regulation passed in obedience to a constitutional provision of this state, and a willful failure to obey the provisions of the statute has all the force of wanton and intentional injury, in contemplation of law."

The statute requiring a safe and commodious passageway means just what it says. The requirement is not met, as applied to Pettigrew's case, by showing that he could have gone around from one side to the other of the shaft by climbing over the débris in the passageway and then struggling through a 15-inch hole. The mule—his vade mecum —could not be gotten through that way at all. After the crate was dumped at the cage, the only way the mule could pass to the other side was over the improvised passageway under the cage. The mine superintendent must have known this. How did he expect the driver to get his mule over this way without going with him? The evidence does not disclose that the mule was an educated or trained animal who, by word or sign from his driver, would unattended cross over the bridge. The mule is a historic animal of well-known characteristics. He is uncertain, coy, and perverse. It is always safer to lead than to push him. It might, in order to avoid passing over the bridge by the driver, have required two men to work the mule, one to urge him across, and the other to catch him when he had crossed. When Petti-

grew knew that this way was provided by his employer for performing his work with the mule, and was thus caught by a descending cage and injured, his injury was the direct result of the plaintiff's willful failure to comply with said statute.

It is urged by plaintiff's counsel that the provision of the policy quoted from item "b" aforesaid should be held inoperative as in conflict with and repugnant to the preceding general statement of the policy that the Fidelity & Casualty Company "does hereby agree to indemnify Chicago-Coulterville Coal Company against loss from common law or statutory liability," etc. This is immediately followed by the "Special Agreements." Item "a" provides that the company's liability for an accident resulting in injuries to or in the death of one person is limited to $5,000, and, subject to the same limit for each person, the total liability of any one accident resulting in injuries to or in the death of several persons is limited to $10,000. Then "b" declares that:

"This policy does not cover loss from liability for injuries as aforesaid to, or caused by, any person unless his wages are included in the estimated wages hereinafter set forth and he is on duty at the time of the accident in an occupation hereinafter described at the place or places mentioned in the schedule, but drivers' and drivers' helpers shall not be covered by this insurance unless the number of drivers and helpers and their estimated wages are separately stated in the estimated pay-roll, or they are drivers and helpers of teams for which the assured carries concurrent Teams' Insurance in this company, nor in any case unless the injured employé is on duty at the time of the accident at a place mentioned in the schedule; nor for injuries occasioned by reason of the failure of the assured to observe any statute affecting the safety of persons; nor for injuries occasioned by reason of the failure of the assured to observe any local ordinance of which he has knowledge."

I am unable to perceive that there is any legal incompatibility or repugnancy between the general opening statement and the provisions immediately following under so conspicuous a head. As well say that an accident policy which in its opening paragraph insures A. against injuries from accidental causes could not qualify or limit this general clause by excepting from its operation injuries to A. caused by the discharge of his pistol while engaged in an attempt to murder some person, or while he was engaged in dueling, or hunting in violation of the Sunday law; or that a fire policy which insures A.'s house against loss by fire could not, under the head of "Special Agreement," except from its operation a liability for loss by fire willfully communicated by the assured to his house, or from a fire communicated by known explosives or combustibles. The general clause "against loss from common law or statutory liability" was neither nullified nor emasculated by the exception, as there were left many subjects-matter upon which it could operate. For instance, but for the statute law of the state, in case of death from the accidental injury, giving a right of action to the designated survivors, there would be no liability on the part of the employer. If the injury was the result of the negligence of a fellow servant, there would be no liability of the master but for the fellow-servant statute of the state. As this policy contract was to apply to injuries occurring in a mine in Illinois, it is to be presumed that the parties were aware of and had in mind the penal statute respecting the duties and obligations of a mine owner in the particular in question. And, as there

could be no liability arising from this source except from the willful failure of duty on the part of the assured, it was peculiarly proper for the insurer to except such culpable misfeasance of the assured from the risk assumed.

The final contention on the part of plaintiff is expressed in its reply, which the court permitted it to file after the hearing of the case was begun, which is as follows:

"That if, at the time of said accident, plaintiff had failed to comply with the statutes of Illinois, as alleged in said amended answer, then plaintiff alleges that said violation of the statutes existed at the time of the issuance of the policy sued on, and defendant company had full knowledge and information as to the condition of plaintiff's mine at said time, and issued said policy with such knowledge and information, whereby it waived the provision of said policy referred to in said amended answer."

The policy contains this express provision that:

"No condition or provision of this policy shall be waived or altered by anyone unless by written consent of the president or secretary of the company, nor shall notice to any agent nor shall knowledge possessed by any agent or by any other person be held to effect a waiver or change in this contract or in any part of it."

The only evidence introduced by plaintiff in support of the allegations of the reply was that of Mr. Thomas, the president of the plaintiff company, located at Kansas City, Mo., the substance of which is that he effected this contract of insurance with Mr. Rush, who was the general agent of the defendant company at Kansas City, Mo., and that Mr. Rush was aware of the fact that the plaintiff company was engaged in developing the mine in question as a new mine, and that it was not in full operation, and the like. He did not, as admitted by him on cross-examination, at the time of taking out the policy in question, advise Mr. Rush of the fact that the mine was being operated without the assured having complied with the statutes of the state of Illinois by having a safe and commodious passageway around the shaft, nor that the passageway which it had theretofore constructed had become and was then obstructed by a cave-in, as shown by the evidence in this case. Without, therefore, considering the provision of the contract above quoted respecting a waiver and notice to the agent, it is sufficient to say that, before a waiver can become effective, the party making it must be informed of the essential facts on which such waiver is based. The evidence falls far short of the allegations of the reply.

It results that the issues are found for the defendant.