G. D. BERRY, Appellant, v. MASSACHUSETTS BONDING & INSURANCE COMPANY, Respondents.

Kansas City Court of Appeals.    April 5, 1920.

1. **CAUSE OF ACTION: Estoppel.** A cause of action must have its foundation either in a contract or in an actionable wrong done. An estoppel can never create a cause of action.

2. ———: ———: Liability Insurance. Defendant had insured B in a policy of employer's liability insurance. After B's death several claims were forwarded to defendant whose agents investigated the same and whose attorneys took charge of the defense. When defendant learned of B's death it withdrew from the defense of the suits and notified plaintiff that it disclaimed any liability. Plaintiff was the general manager of the deceased's business, and executor of his estate. Subsequent to defendant's withdrawal he comprised and paid judgments in the suits arising out of injuries which occurred after B's death and he now sues defendant to recover those amounts. Held, that plaintiff had no contractual relations with defendant; that defendant owed him no duty; that the plaintiff cannot base a right to recover upon the mere fact that the defendant for a while took charge of the defense of the suits; that there could be no estoppel, even if estoppel alone were sufficient to give plaintiff a cause of action, for the reason that plaintiff did not pay out any money in reliance of defendant's conduct, as he had knowledge at the time of payment that defendant disclaimed liability.

Appeal from Buchanan Circuit Court.—*Hon. Thos. B. Allen*, Judge.

AFFIRMED.

*O. E. Shultz* for appellant.

*William E. Stringfellow* and *Harding Deatherage, Murphy & Stinson* for respondents.

TRIMBLE, J.—This is an unusual suit. It is against an Employer's Liability Insurance Company to compel it to reimburse plaintiff for certain sums which he claims defendant should pay by way of indemnity or liability insurance, though it is freely admitted plaintiff has no contract of insurance with defendant and never did have. The trial court found for defendant and plaintiff has appealed. Finding of fact, together with conclusions of law, were filed, and from the former, together with that is concededly shown in the record, we collate the following:

On and prior to February 21, 1913, T. J. Berry owned a foundry in St. Joseph, the business of which he conducted under the trade name of "Berry Iron & Steel

Company," and the plaintiff herein, G. D. Berry, was his general manager. On that date, the defendant issued to T. J. Berry a policy of Employer's Liability Insurance to run for one year, expiring on February 21, 1914. In said policy the assured was described as "an individual" named "Thomas J. Berry, doing business as Berry Iron & Steel Company." Therein defendant agreed to indemnify said T. J. Berry against loss imposed by law upon him for damages on account of bodily injuries suffered by any employee of his by reason of his business. The policy provided that upon the occurrence of an accident to any employee of assured he would give immediate written notice thereof to defendant and would give notice in the event a claim was made; and if any suit was brought against assured to enforce a claim for damages on account of an accident covered by the policy, assured should immediately forward the summons to defendant, whereupon the company would, at its own cost, subject to the limitations in the policy, defend or, at its option, settle such suit in the name and in behalf of assured. The policy also provided that assured should not voluntarily assume any liability nor without the written consent of the Company previously given incur any expense or settle any claim except at his own cost. It was also provided therein that no action should lie against the Company to recover for any loss or expense under the policy unless it should be brought by the assured for loss or expense incurred and paid in money by assured after trial of the issue. It was furthermore provided therein that notice to or knowledge by any agent or other person should not be held to waive any of the terms, conditions or warranties in the policy. It also provided that the premium should be based on the entire compensation paid the employees (with certain exceptions), during the period of the policy, and called for the initial payment of an estimated premium of $209, and if an additional amount became due as shown by the entire compensation paid, the assured was to pay it when determined; and the Company had the right to examine the

books to determine the amount of premium due, upon request, at any time within one year after the policy's expiration.

The policy was delivered to assured's general manager, G. D. Berry, and remained in his possession at least until after June 1, 1914, and presumably until the present suit was brought which was on December 9, 1916.

The home office of the defendant was in Boston, Massachusetts. L. O. Weakley was its soliciting agent at St. Joseph, and he solicited and obtained the application for the policy to T. J. Berry. He had no power to and never did write policies. Applications therefor were sent by Weakley to defendant's branch office in Kansas City, Missouri, where B. L. Guthrie was head of the liability department and S. A. Shockey was at the head of the claim department. All policies were written and issued at this branch office.

D. A. Murphy, an attorney of Kansas City, was defendant's General Attorney in Western Missouri and elsewhere and had general supervisory powers over claims. An attorney at St. Joseph was defendant's local attorney there but he had charge only of those cases that were specially referred to him.

From time to time after the issuance of the policy above mentioned, reports of accidents were sent to the defendant. They were made on blanks supplied by defendant at delivery of the policy, and whenever a report of an accident was sent in, it was signed "Berry Iron & Steel Company."

On July 13, 1913, the assured, T. J. Berry, died, but a few weeks before his death he conveyed the foundry business to C. R. Berry. Neither the Company nor its branch office at Kansas City, including Guthrie, Shockey and Murphy, had any knowledge of T. J. Berry's death at the time or thereafter until as hereinafter shown, sometime in 1914. Weakley and the local attorney knew it when it occurred, being residents of St. Joseph. As to the fact that T. J. Berry had conveyed the business to G. R. Berry, no one connected in any way with the com-

pany had any notice of that until the latter part of March, 1914, of which mention will be hereinafter made.

After the death of T. J. Berry, the foundry business continued on as before without interruption and under the name of the "Berry Iron & Steel Company," and there was nothing in the office or files of Shockey, the claim adjuster, or Murphy the general attorney, to show who constituted "Berry Iron & Steel Company;" while the policy itself and the information based thereon in the files of Guthrie, head of the branch office, showed that Thomas J. Berry an individual composed it.

After T. J. Berry's death as aforesaid on July 13, 1913, accidents occurred to various employees in said business, amounting to eight in number, reports of which were made out on blanks, as before, and signed "Berry Iron & Steel Company," thus not indicating either a change of ownership nor the death of assured, T. J. Berry. These reports were mailed to Weakley in St. Joseph and by him forwarded to the Kansas City Branch Office. The trial court found that in receiving and forwarding these reports Weakley "acted by way of accommodation to the assured and not as authorized agent of defendant."

Among these eight employees injured at various times as above stated, was one, James Welch, injured on September 25, 1913 (after the Berry Iron & Steel Company had been conveyed to C. R. Berry and after T. J. Berry, the assured named in the policy, had died), and a report of this was one of those signed "Berry Iron & Steel Company" and sent to Weakley, who sent it to the branch office in Kansas City, which in turn sent it to the local attorney that he might investigate it. He investigated the facts of the accident but had no knowledge who was the owner of the business or who was the assured in the policy.

On December 20, 1913, said James Welch brought suit for $3000 against G. D. Berry as executor and administrator of the estate of T. J. Berry, deceased, and against G. D. Berry individually. The petition and summons were sent by plaintiff to Shockey, the claim agent

at Kansas City, who in turn sent them to the local attorney at St. Joseph for attention. He took charge of the litigation, filed pleadings in the name of the defendants therein named, took depositions and had charge of said litigation until June 1, 1914.

On January 28, 1914, one James T. Hayes, one of the eight above mentioned, received his injury, and a report thereof, signed as before, "Berry Iron & Steel Company," was likewise sent to Shockey the claim agent, who investigated the circumstances of the accident.

On February 21, 1914 (the date of the expiration of the policy issued to T. J. Berry), a new policy was issued to C. R. Berry doing business as "Berry Iron & Steel Company," which policy was likewise to run one year from date and was similar in form to the prior policy issued to T. J. Berry. This policy was on June 1, 1914, canceled "flat," that is, from the beginning, and, at plaintiff's request, a new policy was issued to G. D. Berry, executor and administrator of T. J. Berry.

On March 10, 1914, James T. Hayes, brought suit for his injury (which had occurred on January 28, 1914, during the term of the T. J. Berry policy), against G. D. Berry, individually, and G. D. Berry as executor and administrator of the estate of T. J. Berry, and charging that his injuries were the result of the negligence of the defendants. The petition and summons in this case were, in the same way as in the other case, sent to the local attorney in St. Joseph, who assumed charge of the defense in the name of the defendants. About March 16, 1914, depositions were taken, in the course of which G. D. Berry testified that C. R. Berry was the owner of the foundry business, and that T. J. Berry had conveyed it to C. R. Berry a few weeks before the former's death.

In view, no doubt, of this testimony, James T. Hayes, on March 20, 1914, brought suit on the same cause of action as before (his injury of January 28, 1914), against C. R. Berry. The latter turned the petition and summons over to G. D. Berry, the plaintiff herein, who in turn delivered them to defendant's local attorney and he assumed charge of this last mentioned suit, filed plead-

ings and remained in charge of the defense thereof until on or about June 1, 1914.

About this date defendant, in writing, notified C. R. Berry, G. D. Berry individually, and G. D. Berry as executor and administrator of the estate of T. J. Berry, that it would no longer assume the defense in the cases above mentioned and withdrew from the defense thereof. Thereupon, attorneys for C. R. Berry, G. D. Berry and G. D. Berry as executor and administrator, took charge of the defense of said suits. The one against C. R. Berry was tried, he denying that he was the owner of the business. A judgment was obtained against him from which he appealed, and which was reversed and remanded for error, but it was adjudicated therein that he was the owner of the business. [Hayes v. Berry, 184 S. W. 913, 915.] Thereafter, Hayes agreed to settle for $3000 and pursuant to said settlement a judgment for $3000 in Hayes' favor against G. D. Berry personally and solely was entered in the case Hayes brought against G. D. Berry individually and G. D. Berry as executor and administrator. G. D. Berry, the plaintiff herein, then paid the judgment, cost and attorneys' fees in that case amounting to $3395.30, and the case against C. R. Berry was dismissed, he paying the costs and attorneys fees amounting to $697.95. The case of Welch against G. D. Berry and G. D. Berry executor was settled by plaintiff at an expense, including costs, of $170.

The trial court further found and concluded that no contract existed between the defendant and either plaintiff or C. R. Berry; that no obligation was created in favor of either plaintiff or C. R. Berry by estoppel even if it were posible to create such an obligation by estoppel; that the evidence did not show plaintiff was damaged even if it be assumed plaintiff's petition sounded in tort; and that even if it could be assumed plaintiff's petition sounded in tort and even if it could be assumed that in that event damages might be presumed, still the evidence did not disclose plaintiff was damaged in excess of nominal damages.

203 M. A.—30

Plaintiff seeks, in the first count of his petition, to recover the amount paid out by him in settlement of the Hayes case which was brought against himself individually and as executor; in the second count he, as assignee of C. R. Berry, seeks to recover the amount paid out in the Hayes suit against the latter; while in the third count plaintiff seeks to recover the amount he paid in settlement of the Welch case.

The third amended petition, filed after the evidence was in, does not proceed upon any theory that there was ever any contract of liability insurance existing between defendant and plaintiff or between it and C. R. Berry. The petition sets out the policy of February 21, 1913, to T. J. Berry, and alleges his death on July 13, 1913, and sets up the injuries occurring to the employees in said business after that date, also the suits brought thereon, the disposition made thereof as herein before stated, and the assumption of the defense of said suits by defendant until June 1, 1914, when it refused to further defend them thereafter. The petition charges that defendant "by its conduct knowingly and negligently led plaintiff and one C. R. Berry, a brother of plaintiff, to believe that it would protect this plaintiff and C. R. Berry, against losses or damage that might result to them by reason of the injuries to employees of said foundry business in all respects the same as it had said T. J. Berry," and by said conduct led them "to believe that they were so protected from and after the date of T. J. Berry's death and until the first day of June, 1914;" that by reason of the facts and conduct of defendant aforesaid "it was the duty of defendant" to defend said actions and pay said judgments, costs and attorneys fees; and that because of all the facts heretofore stated "defendant is estopped to deny liability to this plaintiff for said sums expended by reason of the fact that defendant has misled and deceived plaintiff and induced him to believe that it would defend" said suits, etc. So that the cause of action sought to be established is not based upon any contract extending from plaintiff or his assignor, C. R. Berry, to defendant; but the theory is that

in receiving reports of accidents after T. J. Berry's death and after C. R. Berry owned the foundry business, and in assuming the defense of said suits, based on accidents occurring after Berry's death, the defendant, is *estopped to deny that there was any contractual relation existing between them.* In other words, that estoppel can be relied upon to *create a cause of action* in the absence of any contractual or other relation existing between the parties upon which a cause of action can rest. In the course of the trial, plaintiff's counsel told the court the petition did not charge nor was it attempting to recover on the theory that defendant bound itself by contract, that if plaintiff did base it on a contract he would have no cause of action since the contract was personal to T. J. Berry and the policy died when he died, so plaintiff was "seeking to recover on the ground of estoppel—that they (the defendant) acted as though they did have a contract," the same as the one issued to T. J. Berry, and that it protected plaintiff and C. R. Berry. Again, in another place, counsel stated to the court: "We are not limiting ourselves to the term of that policy; if we did, we couldn't recover; we are not attempting to recover by contract; it is by estoppel." Again in the brief plaintiff says: "The insurance company should be held liable in both cases, not on the ground that it was bound by contract to do so, but by reason of its conduct and by reason of its having assumed that responsibility."

Plaintiff, in support of this theory, cites many cases in which there was a contract existing between the plaintiff and the defendant and wherein, although the latter had a defense, it was not permitted to assert or have the benefit thereof for the reason that it was estopped to set up the defense. But we know of no case wherein estoppel *alone* has been permitted to *create* a cause of action. A cause of action must have its foundation either in a contract or in an actionable wrong done. There is nothing in the petition or in the evidence tending to show a wrong done, or a cause of action arising *ex delicto.* In the case at bar the right asserted is something having no

relation to a wrong and, in the very nature of things, is one that can hardly arise except through a contractual relationship. No doubt there are cases in which the facts giving a cause of action were sufficient to create an estoppel against the defendant, in any circumstances where estoppel could be made applicable, but the cause of action did not *inhere in estoppel*, but in the actionable wrong done the plaintiff, where there was no contract relation reaching from plaintiff to defendant. "An estoppel does not in itself give a cause of action." [Seaton v. Lafone, 19 Q. B. D. 68, 70.] "Its purpose is to preserve rights already acquired and not to create new ones." [State v. Mutual Life Ins. Co., 175 Ind. 69, 82.] In McLemon v. Memphis, etc., R. Co., 69 S. W. 338, 344, it is said: "Estoppel can never be invoked to establish facts but may only be used to prevent parties from relying upon facts which do exist." In LeLievre v. Gould, I. L. R. Q. B. D. (1892) 491, 496, an architect agreed with the owner of certain premises to give certificates from time to time that the work had reached the stage it then had. He made this agreement with the owner knowing the latter had arranged with plaintiff to borrow money on the premises, the loan to be advanced in installments as the building reached certain stages. Inadvertently, but with no fraudulent intent, the architect gave certificates which were not true, the building not having reached the stage therein described. Plaintiff advanced the money and then, upon discovering that the building was not advanced as called for in the certificates, sued the architect for the loss sustained. He was not allowed to recover because there was no contractual relation between them; nor was there any other ground for a cause of action against him since he owed no duty to the plaintiff and was therefore not actionably negligent, nor had he committed a wrong against him since he did not issue the certificates fraudulently  This is a case, no doubt, where the architect would of course, have been estopped to deny that he issued the certificates, but that would not entitle the plaintiff to base his *cause of action* thereon. In order to sustain that, there must have been a *connec-*

*tion extending from the defendant to the plaintiff* arising either *ex contractu* or *ex delicto* before the court could, on that connection or cause of action, declare a liability of defendant and transfer that liability, converted into a right, over to plaintiff.

Even in the case of Fairbanks Canning Co. v. London Guaranty, etc., Co., 154 Mo. App. 337, cited by plaintiff, the court was careful to first rule that plaintiff was "one of the contracting parties" or, in other words, that a contractual relationship existed between the parties so that there was something reaching from the plaintiff to the defendant upon which the cause of action could be founded. The estoppel therein claimed was applied not to create a cause of action but to forbid a defense. Appellant says the principle is the same, but we think not, and to hold that it is would open the door to a wide scope of territory hitherto unentered, the dangers whereof cannot be anticipated.

It is urged that defendant *construed* the T. J. Berry contract as imposing liability on it. No doubt it did, but what liability? The liability to indemnify T. J. Berry and possibly his estate, not some one else. There was no contract between defendant and anyone else to interpret and it was plain and unambiguous, so that interpretation will not control. [Smith Drug Co. v. Saunders, 70 Mo. App. 221, 227.]

The policy did not protect G. D. Berry individually. Nor did he own the business at any time during its existence or the occurence of the accidents. The assumption of the defense of the suits by the defendant did not lead plaintiff to think it was in defense of *him* or *he* was not a party to the insurance contract nor the object of its protection. When *he* agreed that a judgment in the Hayes case should be rendered against him *alone,* and not against the estate of T. J. Berry, and *when he paid* this judgment and the costs, *he knew the defendant company was disclaiming liability and* hence he cannot be said to have been *induced* to pay them *himself,* by reason of any former conduct on the part of the insurance company. He knew too that C. R. Berry was not

a party to the insurance contract; he, plaintiff was not liable for the costs in the C. R. Berry case, and at the time he took C. R. Berry's assignment, he knew the defendant was disclaiming liability. So he cannot claim to have been induced by defendant's conduct to buy C. R. Berry's claim. Hence even if estoppel alone could create a cause of action, it is not seen how plaintiff could claim to have been misled, or induced by defendant's prior conduct to do as he did.

Again, even if estoppel alone could be relied upon to create a cause of action, what is it that plaintiff claims defendant is estopped from doing? Why, necessarily, from *denying that a contract of indemnity insurance existed indemnifying plaintiff and C. R. Berry*. But plaintiff not only knew who the contract of insurance indemnified, but he had better knowledge than the defendant had as to who owned the business at the time the accidents occurred. The plaintiff actually knew everything of which the defendant may be said to have had notice or means of knowing. How then is he in a position to claim that the company is estopped to deny that a contract of insurance existed between them? [Delashmutt v. Teetor, 261 Mo. 412, 443; Bader v. Chicago Mill, etc., Co., 134 Mo. App. 135, 145.]

The judgment of the trial court should be, and is, affirmed. All concur.