**Billie MISTELE, Plaintiff-Respondent,**

v.

**Dale W. OGLE, Defendant-Respondent,**

and

**Phoenix Indemnity Company, Garnishee-Appellant.**

No. 44945.

Supreme Court of Missouri.

Division No. 2.

Sept. 10, 1956.

Harold T. VanDyke, Davis, Thomson, VanDyke & Fairchild, Kansas City, for garnishee-appellant, Phoenix Indemnity Co.

Roy F. Carter, Sprinkle, Knowles & Carter, Kansas City, for plaintiff-respondent.

BARRETT, Commissioner.

Dan W. Ogle and Dale W. Ogle are father and son and obviously the initials "D. W." are appropriate for either of them. On May 18, 1950, Dale, while driving an automobile in Kansas City, struck and injured Billie Mistele, a pedestrian. To recover damages for her resulting personal injuries Billie instituted an action against Dale and Dan in which she alleged that Dale was "the agent, servant and employee of defendant Dan W. Ogle within the scope of

his agency and employment" when he negligently struck and injured her. At the time Dale was driving what was thought to be, at least by some people, a 1941 Studebaker automobile. The plain inference upon this record is that Dale had no liability insurance. Dan, however, had a liability insurance policy in the Phoenix Indemnity Company covering a 1936 Lafayette (Nash) automobile. In any event the occurrence was reported to Dan's liability insurer and on June 24, 1950, he gave a statement in which he said that in March 1950 he had sold the Lafayette and purchased a Studebaker and that he had requested the agent, in Parsons, Kansas who issued the policy, to change the coverage to the recently purchased automobile. On May 19, 1950, the day following Dale's accident, the local agent at Parsons placed an endorsement on Dan's liability policy showing a 1942 Studebaker instead of the 1936 Nash. Billie's action for damages was instituted on July 26, 1950 and on August 21, 1950 Dan and Dale signed a joint statement in which they recounted how the father had purchased the automobile Dale was driving from the Armacost Motor Company, Dale's employer. It was not then set forth in the joint statement, however, that Dan had two Studebaker automobiles, a 1941 model and a 1942 model. Neither was the fact set forth that Dale, an automobile mechanic, either some weeks before the accident or afterward, had switched motors in the two automobiles, placing the motor from the 1942 automobile in the 1941 chassis and the motor from the 1941 automobile in the 1942 chassis. Depending on which version is to be accepted, Dale may have been driving the 1941 Studebaker chassis with the motor from the 1942 model Studebaker when he struck and injured Billie. However, the liability insurance company's attorneys continued representing both Dale and Dan until May 19, 1952 when another firm of lawyers entered their appearance as "additional attorneys." That firm withdrew as counsel on July 17, 1952 and on September 15, 1952, after notice to Dan and Dale, the in-

surance company's lawyers withdrew as their counsel and on November 3, 1952 another firm entered their appearance "on behalf of the above defendants." On January 13, 1953 Billie dismissed her action as to "Dan W. Ogle only," a jury was waived and there was a default judgment against Dale W. Ogle in the sum of $10,000. Thereafter this garnishment proceeding followed and a jury found the issues in favor of the garnisher and a judgment was entered against the garnishee, the Phoenix Indemnity Company, in the sum of $11,200.

Upon this the garnishee's appeal it is contended that the court erred in refusing its motions for a directed verdict for the reasons that, upon this record, the 1941 Studebaker involved in the accident was not an automobile covered by the policy and the issue of the company's estoppel to deny the fact should not have been submitted to the jury. On the other hand, the respondent garnisher contends, under the evidence, that the automobile involved in the collision was the one endorsed on the policy and, in addition, whether it was or not the garnishee by defending the action from July 21, 1950 to September 15, 1952, without a reservation of rights, waived the defense that the automobile involved in the collision was not covered by the policy. The respondent garnisher also contends, by reason of what she says are admitted facts and certain "uncontradicted" testimony, that the court should have directed a verdict in her favor.

■ First as to the garnisher's latter argument, the garnishee has not briefed the point but the garnisher filed no after trial motions and has not appealed from the judgment in her favor. 4 C.J.S., Appeal and Error, § 379, p. 815. In any event, in this garnishment proceeding, including the issue of waiver and estoppel, the plaintiff garnisher had the burden of proving every fact essential to the garnishee's liability, 38 C.J.S., Garnishment, § 228(b), p. 474; Royle Mining Co. v. Fidelity & Casualty

Co. of New York, 161 Mo.App. 185, 142 S.W. 438, and, aside from the fact that the evidence was not "uncontradicted," it was the exclusive province of the jury, in the first instance, to pass upon the credibility of the plaintiff's evidence. Cluck v. Abe, 328 Mo. 81, 40 S.W.2d 558. In the view we have come to as to the essential merits of this appeal it is not necessary to set forth all of the complicated facts and circumstances and indicate the possible inferences. Dan W. Ogle was not called as a witness in this proceeding. The plaintiff garnisher in support of her claim, not for any purpose of impeachment, read from a deposition, taken at the instance of the garnishee, parts of his testimony and, consequently, has vouched for its credibility. Green v. Western Union Tel. Co., Mo.App., 58 S.W.2d 772; Edwards v. Metropolitan Life Ins. Co., Mo. App., 137 S.W.2d 591. His deposition and Dale's testimony, the other witness called by the garnisher, conflicts with their prior written statements, is often self-contradictory and in some respects is contrary to indisputable written documents. The credibility and weight of the evidence aside, Ducoulombier v. Thompson, 343 Mo. 991, 124 S.W.2d 1105, it was nevertheless of sufficient probative force if accepted to support the two issues involved here.

■■ According to the garnishee's evidence the 1941 Studebaker was not covered by the policy and there was no notice to the company within thirty days of its "delivery" to Dan, that it was a newly acquired automobile replacing the insured 1936 Lafayette. Of course, if this version of the transaction is established or believed there was no coverage of the 1941 Studebaker. Annotation 34 A.L.R.2d 936; Appleman, Insurance Law, Sec. 4292, p. 55. There was never an insurance contract between Dale and the garnishee and if he in fact owned the 1941 Studebaker the policy did not cover his liability and could not be made to do so by estoppel. Linenschmidt v. Continental Casualty Co., 356 Mo. 914, 204 S.W.2d 295; Berry v. Massachusetts Bonding & Ins. Co., 203 Mo.App. 459, 221

S.W. 748. But Dan and Dale gave evidence from which it could be found that Dan, not Dale, purchased the 1941 Studebaker on or about March 8, 1950 and that shortly thereafter he made a trip to Parsons, Kansas, and informed the local agent of the fact and requested him to change the liability coverage accordingly. In the circumstances, the issue of the acquisition and delivery of the 1941 Studebaker and whether there was notice of the fact and coverage to Dan were for the jury, "regardless of its manifest uncertainty" and doubtful credibility of the testimony in support of it. Union Automobile Indemnity Ass'n v. Reimann, Mo.App., 171 S.W.2d 721, 726.

■ In this connection it is well to note in passing that the garnisher has pointed to the motor vehicle registration law, V.A.M.S., § 301.210, and the fact that the title to an automobile can be transferred in no other manner than as set forth in the statute, State ex rel. Connecticut Fire Ins. Co. of Hartford, Conn. v. Cox, 306 Mo. 537, 268 S.W. 87, 37 A.L.R. 1456, and urges, apparently, that Dan's title to the 1941 Studebaker was conclusively established. It is further urged therefore that the garnishee's evidence tending to show that Dale not his father, had in fact purchased the automobile constituted a collateral attack upon the title and was properly rejected. Again it is not necessary to detail the facts and carefully analyze the argument, it is sufficient to say that the argument is in part factitious. The application for certificate of title and the official registration receipt for the 1941 Studebaker were signed "D. W. Ogle" and one of the questions is whether "D. W." was Dale or Dan. By his own admissions Dale transferred the title to the 1941 Studebaker to his sister in 1951, signing the title as "D. W. Ogle." As to the policy and a newly acquired automobile the provision is for notice within thirty days "of its *delivery*" to him, Annotation 34 A.L.R., loc. cit. 941, and the title statute does not alter the terms of the policy. Blixt v. Home Mutual Ins. Co., 145 Neb. 717, 18 N.W.2d 78.

In the particular circumstances of this case and upon these precise issues the court prejudicially erred, at the garnisher's instigation, in rejecting the offered evidence.

As long as the company and its representatives had conflicting information from its insured and the withholding of information amounting to deception there was then, of course, no estoppel or waiver by reason of their continued defense of the action. Sweeney v. Frew, 318 Mass. 595, 63 N.E.2d 350. There was the allegation in Billie's petition that Dale was "the agent, servant and employee" of Dan and as long as the petition alleged facts and circumstances within the coverage of the policy, even though groundless, the company was bound to defend the action. 8 Appleman, Insurance Law, Secs. 4682–4683, pp. 3–12. It is defending an action with *knowledge* of noncoverage under a policy of liability insurance without a non-waiver or reservation of rights agreement that precludes the insurer from subsequently setting up the fact and defense. 29 Am. Jur., Sec. 878, p. 672; Annotations 38 A. L.R.2d 1148, 81 A.L.R. 1326; 8 Appleman, Insurance Law, Secs. 4692–4694, pp. 45–70. As it was with the other issue, it is not necessary to detail and analyze all the circumstances relating to the question of estoppel. There was certainly a period of time in this case when the company had no alternative other than to defend the action. The inference the garnishee would have drawn is that it had no knowledge of the facts of coverage until shortly before its attorneys notified Dan and Dale and formally withdrew their representation on September 15, 1952, almost two years after the filing of the suit. But the inference they would have drawn is not the only one reasonably permissible upon this record. Sometime after the principal suit was filed in July 1950 and before their withdrawal in 1952 the facts upon which they relied as demonstrating noncoverage were in their files, if appreciated, or easily discovered had the information as to motor numbers and titles been checked and whether in

these circumstances the company was estopped to deny the fact of coverage as to Dan was likewise for the jury to resolve. Cowell v. Employers Indemnity Corp., 326 Mo. 1103, 34 S.W.2d 705; Fairbanks Canning Co. v. London Guaranty & Accident Co., 154 Mo.App. 327, 133 S.W. 664.

In submitting estoppel to deny coverage the court, at the garnisher's request, gave an instruction setting forth four items which it is stated were admitted by the garnishee, issuance of the policy to Dan, the fact that Dale was involved in an accident with Billie on May 18, 1950, that the lawsuit was filed on July 27, 1950 and an answer filed on behalf of Dale by the garnishee and that on July 17, 1952 the garnishee withdrew from said defense. The instruction then told the jury that the defense of the garnishee was that the policy of insurance did not cover the automobile involved in the collision and, therefore, the jury was instructed that if they found that the accident was reported to the garnisher and investigated and the investigation revealed that Dan had another automobile in addition to the one involved in the accident and the garnishee was "thereby advised of all the facts" upon which it later claimed the policy did not cover the automobile involved but waited twenty-two months before asserting the defense then the jury was told that the garnishee had waived the right to deny the coverage of its policy. It is obvious without demonstration, as applied to this record and the complicated, contradictory facts and circumstances that this instruction is rather abstract, cryptic and abstruse and so lacking in essential factual hypothesis as to be misleading and confusing and therefore prejudicially erroneous. Royle Mining Co. v. Fidelity & Casualty Co. of N. Y., 161 Mo.App., loc. cit. 202–211, 142 S.W., loc. cit. 445–447; Martin v. Mercantile Trust Co., Mo., 293 S.W.2d 319.

In conclusion there should be this caveat to the parties, that the instruction and the merits of the appeal have been considered

and determined on the basis upon which they have been briefed and argued.

For the reasons indicated the judgment is reversed and the cause remanded.

BOHLING and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BARRETT, C., is adopted as the opinion of the Court.

All concur.