

# Missouri Court of Appeals
## Southern District
### Division Two

| | | |
|---|---|---|
| JOSEPH SMITH, | ) | |
| | ) | |
| Plaintiff-Respondent, | ) | |
| | ) | |
| vs. | ) | No. SD33341 |
| | ) | |
| MARYLAND CASUALTY COMPANY, | ) | **Filed: Jan. 23, 2015** |
| | ) | |
| Defendant-Appellant, | ) | |
| | ) | |
| and ANDREW SHAYATOVICH, | ) | |
| | ) | |
| Defendant-Respondent. | ) | |

APPEAL FROM THE CIRCUIT COURT OF LACLEDE COUNTY

Honorable G. Stanley Moore, Circuit Judge

**REVERSED AND REMANDED**

Maryland Casualty Company ("Maryland Casualty") appeals from the trial court's entry of summary judgment in an equitable garnishment action. In two related points, Maryland Casualty argues the trial court erred in granting summary judgment based on the assertion of the plaintiff, Joseph Smith ("Smith"), that Maryland Casualty had waived its right to deny coverage. We reverse because Smith's motion for summary judgment and the supporting documents did not demonstrate Smith was entitled to judgment as a matter of law.

## Standard of Review

"Appellate review of the grant of summary judgment is *de novo*." ***Kinnaman-Carson v. Westport Ins. Corp.***, 283 S.W.3d 761, 764 (Mo. banc 2009). "Summary judgment will be upheld on appeal if: (1) there is no genuine dispute of material fact, and (2) the movant is entitled to judgment as a matter of law." ***Id.*** at 765 (quoting ***ITT Commercial Finance Corp. v. Mid-America Marine Supply Corp.***, 854 S.W.2d 371, 376 (Mo. banc 1993)). "When reviewing a circuit court's summary judgment, we view the record in the light most favorable to the party against whom the circuit court entered judgment." ***Taggart v. Maryland Cas. Co.***, 242 S.W.3d 755, 758 (Mo. App. W.D. 2008).

## Factual and Procedural Background

The following facts are drawn from the parties' statements of undisputed material facts, viewed in the light most favorable to Maryland Casualty as the non-moving party. In May 2011, Smith sued Team Navigator, LLC ("Navigator"), Andrew Shayatovich ("Shayatovich"), Paul Shayatovich, and Russell Custard. According to the petition, on December 20, 2010 Smith was a passenger in a vehicle being driven by Shayatovich and was injured when that vehicle was involved in an accident. Smith further alleged Shayatovich was working as Navigator's agent at the time of the accident.

Navigator had two insurance policies with Maryland Casualty that were in force on the date of the accident: a commercial auto policy with a limit of $1,000,000 and a commercial umbrella policy with a limit of $1,000,000. In September 2011, one of Maryland Casualty's representatives sent Shayatovich a letter in which Maryland Casualty offered to defend Shayatovich in the lawsuit

2

Smith filed in May 2011 ("the first lawsuit") informing Shayatovich that Maryland Casualty was not giving up its "right to later deny paying for any judgment entered against" Shayatovich. Maryland Casualty retained attorney George W. Reinbold, IV ("Reinbold") to represent Shayatovich in the first lawsuit. Reinbold filed an answer on Shayatovich's behalf in the first lawsuit. On August 7, 2012, the first lawsuit was dismissed *sua sponte* without prejudice by the trial court for failure to prosecute.

On August 13, 2012, Smith filed a second lawsuit ("the second lawsuit") against Shayatovich as the sole defendant. Reinbold forwarded the petition in the second lawsuit to Maryland Casualty, telling Maryland Casualty that Shayatovich had authorized Reinbold to accept service in the case on Shayatovich's behalf, and asking Maryland Casualty for permission to accept service of the second lawsuit on behalf of Shayatovich. Despite these events, Shayatovich believed "the action was one continuous lawsuit." Furthermore, while Maryland Casualty told Reinbold after the filing of the second lawsuit, "the defense provided Shayatovich would continue under the same terms and conditions of the defense provided in" the first lawsuit, Maryland Casualty did not send a second reservation of rights letter directly to Shayatovich.

On September 11, 2012, Maryland Casualty filed a petition for declaratory judgment in federal court seeking a determination of whether there was coverage for Shayatovich for the December 2011 accident under the policies Maryland Casualty had issued to Navigator. This suit's summons was served on Shayatovich. Thereafter, Reinbold filed an answer on Shayatovich's behalf in the second lawsuit.

3

On October 6, 2012, Smith and Shayatovich entered into an agreement pursuant to Section 537.065.[1] In that agreement, Shayatovich asserted he had demanded defense and indemnification from Maryland Casualty for damages claimed in the second lawsuit, but Maryland Casualty had refused and continued to refuse to provide him an unconditional defense without reservation of rights and had indicated prospectively "it will not or may not indemnify [him] as a result of any judgment entered against him[.]" Pursuant to the agreement, Shayatovich informed Maryland Casualty he would no longer accept a defense under a reservation of rights. On October 9, 2012, Shayatovich discharged Reinbold.

On October 11, 2012, attorney Zane Williams ("Williams") filed an entry of appearance and answer on behalf of Shayatovich in the second lawsuit. On October 19, 2012, Reinbold filed a Motion to Withdraw as counsel for Shayatovich in the second lawsuit which the trial court granted. On October 26, 2012, a trial was conducted in the second lawsuit. After the presentation of

---

[1] Section 537.065 provides as follows:

> Any person having an unliquidated claim for damages against a tort-feasor, on account of bodily injuries or death, may enter into a contract with such tort-feasor or any insurer in his behalf or both, whereby, in consideration of the payment of a specified amount, the person asserting the claim agrees that in the event of a judgment against the tort-feasor, neither he nor any person, firm or corporation claiming by or through him will levy execution, by garnishment or as otherwise provided by law, except against the specific assets listed in the contract and except against any insurer which insures the legal liability of the tort-feasor for such damage and which insurer is not excepted from execution, garnishment or other legal procedure by such contract. Execution or garnishment proceedings in aid thereof shall lie only as to assets of the tort-feasor specifically mentioned in the contract or the insurer or insurers not excluded in such contract. Such contract, when properly acknowledged by the parties thereto, may be recorded in the office of the recorder of deeds in any county where a judgment may be rendered, or in the county of the residence of the tort-feasor, or in both such counties, and if the same is so recorded then such tort-feasor's property, except as to the assets specifically listed in the contract, shall not be subject to any judgment lien as the result of any judgment rendered against the tort-feasor, arising out of the transaction for which the contract is entered into.

Unless otherwise indicated, all statutory references are to RSMo. (2000).

evidence, the trial court entered judgment for Smith and against Shayatovich in the amount of $1,834,298, plus costs and post-judgment interest.

On November 27, 2012, Smith filed a petition for equitable garnishment under Section 379.200[2] against Maryland Casualty and Shayatovich. Maryland Casualty answered, claiming Shayatovich was not an insured under the policies issued to Navigator. In the alternative, Maryland Casualty asserted that a number of exclusions contained within the policy also applied. Shayatovich then filed a cross-claim against Maryland Casualty claiming a bad faith refusal to settle the second lawsuit within the policy limits.

On December 19, 2013, Smith and Shayatovich filed a joint motion for summary judgment against Maryland Casualty. In support of their motion, Smith and Shayatovich argued Maryland Casualty had waived its defenses when it failed to provide Shayatovich with notice that the defense it was providing in the second lawsuit was pursuant to a reservation of rights. In their statement of uncontroverted material facts, they suggested that Navigator owned the vehicle at issue and that the policies issued by Maryland Casualty provided coverage for the vehicle at issue. Maryland Casualty denied these statements and provided references to the exhibits supporting those denials.

---

[2] Section 379.200 provides as follows:

Upon the recovery of a final judgment against any person, firm or corporation by any person, including administrators or executors, for loss or damage on account of bodily injury or death, or damage to property if the defendant in such action was insured against said loss or damage at the time when the right of action arose, the judgment creditor shall be entitled to have the insurance money, provided for in the contract of insurance between the insurance company, person, firm or association as described in section 379.195, and the defendant, applied to the satisfaction of the judgment, and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment. This section shall not apply to any insurance company in liquidation.

The trial court granted the motion for summary judgment. The trial court found Maryland Casualty did not notify Shayatovich it was defending under a reservation of rights before taking control of the defense in the second lawsuit because the communications to Reinbold were not sufficient to show notice to Shayatovich. The trial court concluded Maryland Casualty had thus waived its defenses and entered judgment against Maryland Casualty in the amount of $1,834,298. The trial court did not make a ruling with respect to Shayatovich's bad faith claim. Nevertheless, the parties agreed and the trial court specifically found there was no just reason for delay to appeal under Rule 74.01.[3] Maryland Casualty appeals.

## Discussion

In its first point, Maryland Casualty argues the undisputed material facts showed it did not waive its right to deny coverage. In its second point, Maryland Casualty argues the trial court's judgment misapplied the law because coverage cannot be created by waiver. We address Maryland Casualty's points together, determining the trial court's grant of summary judgment was incorrect because the undisputed material facts do not show Smith was entitled to judgment as a matter of law.

The structure of the analysis for evaluating a motion for summary judgment depends on whether the party seeking summary judgment was a claimant or a defendant. *Taggart*, 242 S.W.3d at 758. Here, the moving party, Smith, was the claimant in this case. "For a claimant to be entitled to summary

---

[3] This finding and the Western District's opinion in *Jensen v. Allstate Ins. Co.*, 349 S.W.3d 369, 373-74 (Mo. App. W.D. 2011), convince us that we have appellate jurisdiction to address the merits of this appeal in spite of the fact that Shayatovich's bad faith claim remains pending in the trial court.

6

judgment, he or she 'must establish that there is no genuine dispute as to those material facts upon which he would have had the burden of persuasion at trial, entitling him to judgment as a matter of law' and must allege undisputed facts establishing every element of his claim." *Id.* (quoting *State ex rel. Nixon v. Watson*, 204 S.W.3d 716, 719 (Mo. App. W.D. 2006)). Stated another way, lack of a disputed material fact is a necessary but not sufficient basis for the entry of summary judgment: "the motion must still be denied if those factual assertions are not sufficient to entitle the movant to judgment as a matter of law." *Jordan v. Peet*, 409 S.W.3d 553, 558 (Mo. App. W.D. 2013). If the undisputed material facts do not satisfy the relevant legal tests, summary judgment is not appropriate. *Id.* at 558-60. Thus, to determine whether summary judgment was proper in this case, we must examine what must be shown to succeed in an equitable garnishment action.

To obtain relief in an equitable garnishment action, the plaintiff must demonstrate (1) he or she obtained a judgment; (2) the insurance provided by the defendant covered the damages awarded in the judgment; and (3) the policy was in effect at the time of the events giving rise to the liability which resulted in the judgment. *Taggart*, 242 S.W.3d at 758. There is no dispute that Smith obtained a judgment or that the policies issued by Maryland Casualty were in effect at the time of the December 2011 accident. The only remaining issue is whether the undisputed facts showed the policy provided by Maryland Casualty covered the damages awarded against Shayatovich in the judgment. An examination of the relevant documents shows the facts regarding this element were disputed.

7

In their statement of uncontroverted material facts, Smith and Shayatovich imply the vehicle involved in the accident was owned by Navigator, and Navigator had insurance covering the vehicle involved in the accident. Those are the only facts Smith and Shayatovich state which would give rise to an inference that the insurance provided coverage for the underlying judgment. However, those facts were not properly supported as required by Rule 74.04.

In support of the statements regarding the ownership of the vehicle and the insurance coverage for the vehicle, Smith and Shayatovich cite to only the petition in the first lawsuit. However, Rule 74.04 requires that the statements of fact supporting a motion for summary judgment must be supported "with specific references to the pleadings, discovery, exhibits or affidavits that demonstrate the lack of a genuine issue as to such facts." Rule 74.04(c)(1). Furthermore, citing to a verified petition, because such a document need not be based entirely on facts regarding which the petitioner is competent to testify, typically does not satisfy the evidentiary burden imposed by Rule 74.04. *See **DeCormier v. Harley-Davidson Motor Company Group, Inc.**,* 446 S.W.3d 668, 672 (Mo. banc 2014); ***Bilyeu v. Vaill***, 349 S.W.3d 479, 482 (Mo. App. S.D. 2011). When the moving party is a plaintiff, the moving party must present undisputed facts supporting each and every element of his or her claim in order to prevail on summary judgment. Here, Smith failed to do so on at least this particular element of his claim. Consequently, summary judgment in Smith's favor was improper.

The trial court's conclusion to the contrary was premised on the conclusion that Maryland Casualty waived its right to later deny coverage in the

8

second lawsuit. This conclusion involves two concepts: an insurance company's decision to defend under a reservation of rights and a waiver by the insurance company. Generally speaking, "an insurer may choose to undertake the defense of its insured and reserve its right to later disclaim coverage, provided it gives the insured notice of a reservation of rights." *Safeco Ins. Co. of Am. v. Rogers*, 968 S.W.2d 256, 258 (Mo. App. W.D. 1998). Waiver is a distinct concept. "Waiver is the intentional relinquishment of a known right." *Whitney v. Aetna Cas. & Sur. Co.*, 16 S.W.3d 729, 733 (Mo. App. E.D. 2000). A wavier may be express or implied. *Id.* "If waiver is 'implied from conduct, the conduct must clearly and unequivocally show a purpose to relinquish the right.'" *Brown v. State Farm Mut. Auto. Ins. Co.*, 776 S.W.2d 384, 387-88 (Mo. banc 1989) (quoting *Shapiro v. Shapiro*, 701 S.W.2d 205, 206 (Mo. App. E.D. 1985)). In the present case, the basic facts pertaining to the issue of waiver are not disputed, but those facts do not entitle Smith to judgment as a matter of law.

The parties agree that at the time of the filing of the first lawsuit Maryland Casualty notified Shayatovich in writing and in detail that Maryland was willing to provide a defense to him pursuant to a reservation of rights. The parties further agree that Reinbold continued to represent Shayatovich in the matter at the time the second lawsuit was filed and that Maryland Casualty did not send Shayatovich a second reservation of rights letter. None of these facts show an express waiver. Thus, we must consider whether there was an implied waiver.

Generally, whether a party's conduct "can be construed as an implied waiver is a question of fact." *Frisella v. RVB Corp.*, 979 S.W.2d 474, 477 (Mo. App. E.D. 1998). Here, the facts are insufficient to support an inference that

9

Maryland Casualty intentionally relinquished its right to later disclaim coverage. The mere fact of failing to send a second reservation of rights letter, although it might support a finding of waiver, is not so compelling standing alone that it demands the conclusion, as a matter of law, that Maryland Casualty waived its right to disclaim coverage, especially when we are required to draw all inferences in the light most favorable to the non-moving party. As such, the facts, although not disputed, do not demonstrate Smith was entitled to judgment as a matter of law.

Smith's argument to the contrary discusses the insurance company's duty to send a "proper" reservation of rights letter to the insured, relying on *Mistele v. Ogle*, 293 S.W.2d 330 (Mo. 1956), *Advantage Buildings & Exteriors, Inc. v. Mid-Continent Casualty Co.*, No. WD76880, 2014 WL 4290814 (Mo. App. W.D. Sep. 2, 2014) (application for transfer denied Dec. 23, 2014), and *Kinnaman-Carson*. Smith states the actions in this case were not sufficient to meet that duty. He suggests the September 2011 letter was not sufficient because it did not specifically inform Shayatovich regarding the second lawsuit and that the subsequent filing of the federal declaratory action was not sufficient notice because it did not inform Shayatovich of his right to hire independent counsel. Finally, he concludes Maryland Casualty's interpretation of waiver is too strict, stating that all Maryland Casualty had to do to prevent a waiver was to "provide a written notice to Shayatovich that it was offering to defend him in [the second lawsuit] subject to [Maryland Casualty's] rights to later disclaim coverage." Smith's position is that for an insurance company to reserve its rights to assert coverage defenses, the insurance company must send a "proper" reservation of

10

rights notification.  In order to be "proper," Smith alleges that notification must (1) be sent directly to the alleged insured; (2) be sent prior to the insurer's taking action in the defense of the lawsuit; (3) be in writing; (4) identify the specific lawsuit at issue; (5) notify the alleged insured that the insurance company's interests may be in conflict with the alleged insured's interests; and (6) notify the alleged insured of his right to employ independent counsel.

The cases Smith cites do not impose these requirements.  Instead, they note that the insured must be fully informed.  *Mistele*, 293 S.W.2d at 334; *Advantage Buildings*, 2014 WL 4290814, at *4; *Kinnaman-Carson*, 283 S.W.3d at 765.

Furthermore, *Kinnaman-Carson* and *Advantage Buildings* are factually distinguishable.  In *Kinnaman-Carson*, the insurance company explicitly agreed to provide an unconditional defense.  *Kinnaman-Carson*, 283 S.W.3d at 763.  Thus, anything *Kinnaman-Carson* states regarding what formalities are necessary to protect the insurance company's rights to provide a defense under a reservation of rights is dictum.  The conclusion in *Advantage Buildings* was based on a theory of estoppel.  *Advantage Buildings*, 2014 WL 4290814, at *5.  That is a distinct theory which is not at issue in this case because estoppel requires a representation by the insurance company.  Smith never asserts Maryland Casualty made such a representation.

Finally, the list of formal requisites Smith assembles for a "proper" notice only serves to emphasize the impropriety of summary judgment in the present case.  Only if all those elements of "proper" service are legally required can Smith demonstrate an absence of an issue of material fact.  As these formalities are not

11

legally necessary to preserve a reservation of rights, there are facts in the present record, which, if believed after a trial, could support an inference that Shayatovich did receive notice.

The trial court erred in granting summary judgment. Maryland Casualty's points are granted.

## Decision

The trial court's judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

MARY W. SHEFFIELD, P.J. – OPINION AUTHOR

GARY W. LYNCH, J. – CONCURS

DON E. BURRELL, J. - CONCURS

12