COMPTON HEIGHTS LAUNDRY COMPANY a Corporation, Respondent, v. GENERAL ACCIDENT, FIRE and LIFE ASSURANCE CORPORATION, LIMITED, OF PERTH, SCOTLAND, Appellant.

### Springfield Court of Appeals, December 22, 1916.

1. **INSURANCE: Assignment of Policy: Waiver of Provisions.** Action on employers liability·policy. The policy was issued to several individuals who were doing business as a partnership. Afterwards the parties incorporated. They requested insurer's general manager to see that the insurance covered the corporation, which he agreed to do. Afterwards the auditor of the insurance company examined the pay roll on which the premium was based but there was no change made upon the policy. The agent by his conduct foreclosed defendant's right to insist on a formal written assignment of the policy and its consent endorsed thereon, as provided for in said policy.

2. ————: **Employer's Liability Insurance: Presumption as to Policy Provisions.** Where the testimony tends to prove that an employer's liability insurance company recognized an accident as covered by its policy and proceeded to act thereunder according to its terms, the insured is presumed to have been prejudiced by such conduct.

3. ————: ————: **Waiver of Provisions by Insurer: Evidence.** Action on employer's liability policy by employer who suffered judgment in an action by an employee on the ground of its negligence in not safeguarding a mangling machine. Evidence reviewed and *held* sufficient to show that the insurer waived the provisions of a rider relieving it of liability for personal injury resulting from such negligence.

4. **INSTRUCTIONS: Employer's Liability Insurance: Waiver: Jury Questions.** A waiver is a mixed question of law and fact. It is a question of intention and a fact to be determined by the jury. Hence an instruction on waiver which was in effect a peremptory instruction to find for the plaintiff upon a finding of the matters referred to in the instruction was erroneous.

5. ————: ————: **Waiver: Erroneous Instruction.** Action on employer's liability·policy. An instruction on insurer's waiver of the provisions of a rider which relieved it from liability for injury to employee for failure to safeguard a mangling machine *held* erroneous as it failed to submit whether the insurer's agent when he investigated the cause of the accident knew or should have known that such negligence caused the injury.

6. **INSURANCE: Employer's Liability Policy: Vexatious Refusal to Pay.** Action on employer's liability policy, the employers having suffered a judgment in a suit brought by an employee for personal injuries. Evidence reviewed and *held* to make defendant's vexatious refusal to. pay amount due under its policy, subjecting it to damages, a question for the jury.

7. ————: ————: **Damages: Attorney's Fee.** Where a liability insurer repudiated liability under its policy but offered employer free use of its legal department, the employer it not thereby prevented from recovery of attorney's fees incurred in defending a suit for injury.

### On Motion For Rehearing.

8. **PLEADING: Verdict and Judgment Responsive: Personal Injuries: Master and Servant.** Where in an employer's action for personal injuries the petition alleged as the sole ground of negligence a failure on the part of the employer to safeguard a laundry mangling machine as required by law, the verdict and judgment must be held to have established such negligence.

9. **WAIVER: When Question of Law Only.** Where the facts are undisputed and leave no room for divergence of opinion as to the force and effect of the same in establishing negligence, the question is one of law only.

10. **INSURANCE: Employers' Liability Insurance: Duty of Insurer to Defend Action for Damages.** So long as there is a probability, if not a possibility of the plaintiff in a damage suit recovering on the ground of liability covered by the indemnifying policy, the insurer is not only justified in taking charge of the litigation but can withdraw from it only at his peril.

11. ————: ————: **Waiver: Rights of Defense.** An employers' liability insurer cannot be *held* to have waived any defense under the policy by defending or negotiating for a compromise settlement so long as any peril exists.

12. ————: ————: **Right of Defense.** When there are or may be different grounds of liability asserted for some of which the insurer is liable and for some of which the insured must stand the loss, neither party can exclude the other from participating in the defense.

Appeal from Butler County Circuit Court.—*Hon. J. P. Foard,* Judge.

REVERSED AND REMANDED.

*Merritt U. Hayden* and *Mozley & Green* for respondent.

*Holland, Rutledge & Lashly* and *Ernest A. Green* for appellant.

ROBERTSON, P. J.—This is an action on an employers' liability policy. The suit was brought in Iron County and by agreement the venue was changed to Butler County. By the terms of the policy defendant agreed to protect the insured for one year from May 18, 1914, against loss by reason of liability for damages on account of the injuries of its employees suffered through the assured's negligence. On December 1, 1914, an employee in the laundry was injured, afterwards sued the plaintiff, obtained a judgment for $3750 which the plaintiff paid and then brought this suit to recover said amount, together with the costs therein and their attorney's fees, also ten per cent as damages and attorney's fees in this case for vexatious refusal to pay. The father of the employee made a claim against plaintiff for loss of the services of said employee and that was settled by plaintiff paying him $250 and that is included in this suit. A jury trial was had and resulted in a verdict for plaintiff for $4225.25 and an attorney's fee for this case at the sum of $200. The defendant has appealed.

The defenses are that the policy was not issued, or assigned with the consent of the defendant, to the plaintiff and that there is no liability on the part of the defendant by reason of the following rider attached to and made a part of the policy:

"It is hereby understood and agreed, that all the mangling machines owned or operated by the assured shall be provided with fixed guards or safety feed tables adjusted at the point of contact of the rolls so as to prevent the fingers or hands of the employees from being drawn into the rolls, and that such guards shall be maintained during the term of this policy. Any failure on the part of the assured to provide and maintain such guards shall relieve The General Accident Fire and Life Assurance Corporation, Limited, from liability on account of personal accident due to such neglect, and this policy is accepted by the assured accordingly."

The policy limited defendant's liability to five thousand dollars for any one person injured. In the

suit brought by the injured party involved in this litigation damages in the sum of ten thousand dollars were sought to be recovered.

The policy was issued to John F. Winter, Louis M. Winter and Joseph N. Barthelmass doing business in St. Louis as Compton Heights Laundry. In the latter part of June, 1914, these parties, being desirous of organizing a corporation under the laws of Missouri, informed the general manager of defendant for the State of Missouri, and a portion of Illinois, that they were going to incorporate and requested him to see that the insurance properly covered the corporation and this the manager agreed to do. The corporation was perfected and the certificate issued on June 30, 1914, and thereafter the business was continued at the same place by the same individuals and under the same management, although there were no changes or notations made upon the policy. The premium was based upon and regulated by the amount of wages paid the employees and called the payroll. An auditor for the defendant examined the payroll from the week ending May 23, 1914, to the week ending February 27, 1915. He also made an audit of the payroll up to March 1, 1915, when the policy was cancelled. So far as the record discloses the premium was paid up to the date of the cancellation. After the accident happened and after the suit was brought by the injured person against the plaintiff here as a corporation, the defendants denied liability therefor solely upon the ground that by reason of the rider it was not liable to plaintiffs on account of any claim made by the injured person.

The injury caused the employee, and upon which the action to recover damages therefor was based, was caused by the failure of plaintiff to equip its machinery as required in said rider. The defendant was duly notified of the accident and upon the next day thereafter its representative was at the laundry taking statements of witnesses who were working with the injured employee at the time of the accident. Two days later another employee of the defendant in charge of its

claim department in St. Louis was at the laundry investigating the accident, examined the machine where it occurred and stated to plaintiff's manager that they would take care of the matter. Various employees of defendant were thereafter at the laundry at various times looking after the matter of this accident and made numerous visits to the injured employee endeavoring to effect a settlement and made an offer of compromise. The investigations and the negotiations with the injured party were continued in behalf of defendant until January 16, 1915, when a letter was written to the plaintiff quoting the contents of the rider and stating that the investigation of the case would be continued "under full reservation of rights under the terms of our policy and if it should develop that this machine was not provided with a fixed guard or safety feed table such as is required by the terms of your policy and if above injured attempts to and succeeds in predicating liability on the failure above mentioned then in such event we would not be required to indemnify you for any judgment that might be obtained by above injured against you." This letter was written in behalf of defendant by said employee in charge of the defendant's claim department at St. Louis who had examined the machine and negotiated with the injured employee. Under date of February 13, 1915, the same employee of defendant in its behalf wrote another letter to the plaintiff stating that they had investigated the accident and discovered that the injury occurred on a machine that was not equipped as required by said rider and denied liability under its policy on account of the injury. The defendant alleges in its answer that the injury, if any, to plaintiff's employee was due to the absence of the guard referred to in the rider, and the facts and circumstances tend to prove that during all the time its agents were investigating the accident, promising to take charge of the claim and endeavoring to settle it, they knew that there was but one ground of negligence relied upon, and this would justify the further conclusion that what they did was not for the purpose of

ascertaining if the policy covered the accident but for the purpose of treating it as a liability thereunder. On March 8, 1915, the injured party commenced suit against the plaintiff and it caused a copy of the summons and petition to be sent to the defendant to which it replied, as above stated, denying any obligation to proceed with the defense solely because the accident involved was not covered by the policy. The plaintiff here, the defendant in that case, filed an answer in the case and after some negotiations a settlement was agreed upon whereby the injured person was to obtain a judgment for $3750. Testimony was introduced and a judgment entered for the amount agreed upon. The injured person was a minor and the father made a claim for loss of services which was compromised for $250 without litigation.

Plaintiff in its petition, after alleging the commencement of the suit against it by the injured party, the existence of an opportunity to compromise and settle the claim and notice to the defendant of that fact, alleged that such proceedings were had in said suit that judgment was rendered therein as aforesaid. The defendant in its answer which contains a general denial alleges, besides the other defenses, the terms of its policy to the effect that it was liable to the assured only for loss actually sustained and paid in satisfaction of a judgment after trial of the issue, and alleged that while a judgment was entered in said case it was not after a trial but that the judgment was rendered by consent of the parties and without any trial of the issues. This portion of the answer was stricken out. No exceptions thereto were saved and no complaint was made of the court's action in this regard in the motion for a new trial.

The plaintiff, in order to meet the defense as to the effect of the rider, contends that it had as a matter of law and fact met the requirements of the provisions of the rider. This is based upon an argument concerning what could be done towards a literal compliance. We do not deem it necessary to go into the details of

the construction and arrangement of the machine but it is sufficient to say that we do not uphold plaintiff's contention. The plaintiff did not comply with this provision and if the effects thereof can be avoided it must be done in this case on the theory of a waiver on the part of the defendant.

The contention made in behalf of defendant that it is not liable to the plaintiff because of the fact that the policy was issued to and indemnified, a partnership cannot be upheld. The same agency that was its general manager for Missouri and portions of Illinois was also engaged in and had charge of the soliciting, collecting premiums and issuing policies in the city of St. Louis. The policies did not become effective until after countersigned by the person in charge of that agency. This agency by its conduct which we have related foreclosed defendant's right to insist on a formal written assignment of the policy and its consent endorsed thereon, as provided for in said policy.

The question in this case that involves the real gist of the controversy is that of the alleged waiver of the requirements of the rider. The provisions of the liability policies are peculiar and are in a class to themselves in that they carefully and explicitly reserve to the insurer the exclusive right to manage and control all controversies that arise by reason of accidents to the employees of the insured and they expressly prohibit any interference on the part of the insured. It is a well-known practice concerning all transactions to require of anyone to take advantage of his rights at a proper time. It is also held in many instances that a party has relinquished or refused to accept a right in such a way that the contention cannot thereafter be entertained that such right was ever possessed. It must also be remembered in considering a case of this character that the insured, if not protected by the terms of his policy, should have a free hand to proceed, as soon as practical, in his own way. This right is as essential to the insured as are the provisions in the

policy giving the insurer exclusive control of accidents covered by its policy.

In the case of Fairbanks Canning Co. v. London Guaranty & Accident Co., 154 Mo. App. 327, 335, 336, 133 S. W. 664, in discussing the characterization of the action of an insurer under a policy of this kind which deprives it of a defense otherwise available, states: "But in whatever way it may be designated, it is such conduct on the part of the insurer as will cut him out of a defense he might have made had he insisted upon it at a time when the other party might have taken care of himself to his complete exculpation, or at least, a betterment of his condition. If, instead of relying upon his right when the claim was first brought to his attention, he, without due investigation, assumes himself to be liable, sets the assured aside and claims the right of control of the defense, he cannot afterwards ignore the right the assured has acquired by reason of such action, merely because he has made a belated discovery of fact, or law which he thinks puts the case outside the terms of the policy."

Where, as in the case at bar, the testimony tends to prove that the insurer recognized an accident as covered by its policy and proceeded to act thereunder according to its terms, the insured is presumed to have been prejudiced by such conduct and this is not a rebuttal presumption. [Royle Mining Co. v. The Fidelity and Casualty Co. of New York, 161 Mo. App. 185, 197, 142 S. W. 438.]

Under the well-established rules of law in this State governing the actions of an insurer in a case of this character unquestionably there was sufficient testimony upon, which to base the conclusion that defendant waived the provisions of its rider. It becomes necessary, therefore, to ascertain if the issues were properly submitted to the jury under the instructions given in behalf of the plaintiff.

There were four instructions (A, B, C and D) in behalf of plaintiff. Instruction A is upon the question of the authority of the agent who solicited, counter-

signed and issued the policy and B is upon the transfer of the policy to the corporation by the partnership. These two instructions were without error.

Instruction C is as follows:

"The Court instructs the jury that if, under the preceding instructions and from a preponderance, of the evidence in this case you find that the policy introduced in evidence was in full force, covering and insuring the plaintiff on the 1st day of December, 1914; and if you further find that on said date one Florence Behrns was injured while in the employ of the plaintiff and while feeding a machine known as a mangle; that plaintiff gave defendant due notice of said injury; that within a few days thereafter the defendant caused an investigation of the accident resulting in said injury to be made by its duly authorized adjuster or adjusters; that at the time of making such investigation, if you find one was made, said adjuster or adjusters either saw and knew, or by the exercise of due diligence would have seen and known that said mangle was not equipped with fixed guards or safety feed tables adjusted at the point of contact of the rolls, in the manner in which defendant now claims it should have been equipped and as provided in the rider to said policy; that, nevertheless, said adjuster or adjusters then proceeded and thereafter continued to treat said accident and the injury to said Florence Behrns, as if the same were fully covered under said policy, and that he or they thereafter entered into negotiations with said Florence Behrns and her parents for a settlement of any claim which she or they might have for damages against plaintiff, because of such injuries, and that negotiations were continued from time to time until on or about the 16th day of January, 1915, without any notice from defendant to plaintiff to disclaim liability under said policy, for said injury, then the defendant is not relieved from liability in this case because of any failure on the part of plaintiff to equip said mangle in the manner hereinbefore described, even though you may

195 M. A.—21

find and believe from the evidence that said mangle was not so equipped.''

This instruction was a peremptory one to find for the plaintiff upon a finding of these things referred to in the instruction. This was error because ''A waiver is a mixed question of law and fact, . . . It is a question of intention and a fact to be determined by the jury.'' [Exchange Bank v. Thuringia Ins. Co., 109 Mo. App. 654, 659, 83 S. W. 534, and cases there cited.]

This instruction should have also submitted to the jury the question as to whether defendant's agents knew or by the exercise of ordinary diligence would have known, that at the time they were investigating the accident, assuring plaintiff that defendant would look after the claim and undertaking to settle, it was caused as alleged in the answer. The defendant had the right to make such investigation as was reasonably necessary to determine if the accident was covered by the policy and this right should not be ignored in the instructions to the jury. The defendant's agent may have seen the machine and known it was not equipped as required by the rider, yet it may have been necessary to make further investigation to ascertain if that was the cause of the injury of the basis of the employee's claim and, if so, in doing this no ground of waiver would be created while properly endeavoring to ascertain those facts. [Murch Brothers Construction Company case, supra.]

Instruction D required the jury to find that the injured party recovered the judgment paid by the plaintiff and the attorney's fees incurred by reason of the litigation resulting in the judgment and further told the jury, in effect, that if it was found that the plaintiff paid the father of the injured employee in settlement of his said claim the sum of $250 and that in doing so plaintiff acted honestly and in good faith that they should find for it for said sum. This instruction is erroneous because the jury should have been required to find, before being allowed to assess the sum paid the

father, that the amount was reasonable and properly paid as a liability under the policy.

From the fact that the judgment against the plaintiff here, in the suit by its employee, was entered by agreement and testimony was likely taken as a mere matter of form, it may be doubtful if it should be treated as a judgment obtained as the result of a regular trial. We call attention to this phase of the case and to the opinion in the case of Dunham v. Philadelphia Casualty Co., 179 Mo. App. 558, 565, 162 S. W. 728, wherein it is stated that the insurer is not obligated to the insured by the latter "merely paying out money on claims presented." [See also the cases cited in Carthage Stone Co. v. Traveler's Insurance Co., 186 Mo. App. 318, 327 and 328, 172 S. W. 458, and Murch Brothers Construction Co. v. Fidelity & Casualty Co., 190 Mo. App. 490, 413, 176 S. W. 399, et seq.] This question not being a decisive point, and not being covered extensively by the briefs, we pass it without deciding it as likely it will not arise again even if there is another trial.

Defendant contends that there is no evidence upon which the jury could properly base a finding that it had vexatiously refused to pay the amount due under its policy. This contention cannot be upheld. If the jury finds that the defendant waived the provisions of the rider, assumed control of the claim of the injured party under the terms of the policy, which excluded plaintiff from all concern thereabout, and it is found that after defendant did all .this it thereafter concluded its interests would be better served by then withdrawing from the controversy and deny all liability, which it did, there would be sufficient disclosed to justify a finding of vexatious refusal to pay, when proof is made of the amount due.

In defendant's letter of February 13, 1915, it tendered plaintiff the free use of its legal claim departments to handle the claim of the injured employee, provided plaintiff would agree that such aid would not waive any of defendant's rights. The defendant re-

quested an instruction that if the jury believed this offer was made then they should allow no amount on account of any attorney's fee incurred by plaintiff in defending the damage suit. The instruction was refused and this is urged here as a fatal error. We cannot so hold. When defendant refused to discharge its duty as to this claim it hereby lost all right to participate therein or dictate to plaintiff how the matter should be handled. It could not select plaintiff's lawyers even though they could be obtained free of charge; neither was there any duty devolving on plaintiff to accept the offer. It had an interest in the defense of this claim over and beyond the indemnity of the policy. The suit was for five thousand dollars more than the amount called for by it. When defendant repudiated its contract it surrendered all rights pertaining to the management of the defense of the claim and can be heard to complain only that it was not honestly and fairly conducted in a reasonably prudent and economical manner.

By reason of the errors in giving said instructions in behalf of plaintiff the judgment is reversed and the cause remanded.

*Farrington, J.;* concurs; *Sturgis, J.,* concurs in the result.

STURGIS, J.—In the plaintiff's motion for rehearing it is claimed that, while defendant alleged in its answer that the failure to guard the machine in question was the cause of the injury for which plaintiff was held liable in the damage suit of Florence Behrns against the plaintiff herein, there is no proof of such allegation. The proof, however, is contained in the pleadings and judgment in such case. Such pleadings disclose that the sole ground of negligence complained of was the failure to guard the machine as required by law, and the verdict and judgment in that case must be held to have been responsive to that issue.

Another point is that instruction C criticized in the main opinion predicates waiver on undisputed facts

and therefore the question of waiver is one of law only and the instruction is correct. Cases are cited—as for instance, Myers v. Maryland Casualty Co., 123 Mo. App. l. c. 687, 101 S. W. 124—holding that where the facts are undisputed and leave no room for divergence of opinion as to the force and effect of the same in establishing a waiver, the question is one of law only. That, however, is not this case. There is grave doubt in the present case whether or not the proven facts do not fail to show a waiver as a matter of law rather than the converse. In Murch Brothers Construction Co. v. Fidelity and Casualty Co., 190 Mo. App. 490, 176 S. W. 399, the court held that, so long as there is a probability, if not a possibility, of the plaintiff in the damage suit recovering on a ground of liability covered by the indemnity policy, the insurer is not only justified in taking charge of the litigation but can withdraw therefrom only at its peril. In that case the injured party claimed damages on a ground of liability covered by the policy and on a ground not so covered, and the court held that so long as there remained in the case a ground of liability covered by the indemnity policy the insurer could withdraw from the defense of the case only at its peril. In the present case, the plaintiff herein (defendant in the damage suit of Florence Behrns) then and here insisted that it had fully complied as far as is possible with the policy requirement as to placing a guard on the machinery and that its liability, if any, to the injured party must be placed on other grounds. While defendant may have readily discovered, as plaintiff now claims, to its own satisfaction at least that plaintiff's failure to place a guard on the machinery was the cause of the accident and exempted it from liability, yet it may be seriously contended that the defendant insurer, notwithstanding its belief in that respect, could not know in advance of the bringing of the damage suit on what ground of negligence the injured party might assert liability and produce evidence to sustain the same. Not only did the defendant have

the right before withdrawing from the defense of the damage suit to make such investigation as was reasonably necessary to determine if the accident was covered by the policy, but it had a right to stay in the defense and negotiate for a compromise settlement so long as there was any reasonable ground to apprehend that a claim of liability could or would be made on any ground covered by the policy. [Buffalo Steel Co. v. Aetna Life Ins. Co., 136 N. Y. Supp. 977, 984.] Since an insurer in this form of policy can refuse to defend an action for damages only at its peril, it ought not to be held to have waived its rights by defending so long as any peril exists. Where there is or may be different grounds of liability asserted for some of which the insurer is liable and for some of which the insured must stand the loss, then it would seem that neither party can exclude the other from participating in the defense (Buffalo Steel Co. v. Aetna Life Ins. Co., supra; Chicago-Coulterville Coal Co. v. Fidelity & Casualty Co. of N. Y., 130 Fed. 957, 960), but that question is not before us.