MISSOURI MANAGERIAL CORPORATION, a Missouri Corporation, Attorney-in-Fact for the Subscribers at the Eagle Reciprocal Exchange, Plaintiff-Appellant,

v.

Carmello PASQUALINO, Margaret Pasqualino, Carol Wisdom, and Michael (Mike) Gillotte, Defendants-Respondents.

No. 22851.

Kansas City Court of Appeals.

Missouri.

March 2, 1959.

Clarence C. Chilcott, Kansas City, for appellant.

Pew, Taylor, Sheridan & Baty, John L. Sheridan, John R. Baty, Kansas City, for respondents Carmello Pasqualino, Margaret Pasqualino and Carol Wisdom.

Thomas M. Sullivan, Kansas City, for respondent Michael Gillotte.

MAUGHMER, Commissioner.

This is a suit for declaratory relief under the Uniform Declaratory Judgments Act, Chapter 527, V.A.M.S.

The controversies arise out of an automobile liability insurance policy issued by Missouri Managerial Corporation for Eagle Reciprocal Exchange, to one Michael Gillotte. The ultimate issue to be adjudicated

is whether the policy covers Gillotte's liability arising out of an automobile accident which occurred in Platte County, Missouri, on July 10, 1955. The plaintiff and appellant is the insuring company. The defendants include Gillotte, the insured, Carol Wisdom, owner, and Carmello and Margaret Pasqualino, passengers in the other automobile involved in the accident.

The policy was issued February 18, 1955, for a term of one year and covered a 1950 Ford. The insuring agreement provided: "Newly acquired automobile: An automobile, ownership of which is acquired by the named insured who is owner of the described automobile, if the named insured notifies the company within thirty days following the date of its delivery to him, and if either it replaces an automobile described in this policy * * *". The liability coverage was $5,000 and $10,000 and for $5,000 property damage.

On May 8, 1955, the insured sold or traded the Ford to Berl Berry Motor Company and replaced it with a 1954 Mercury. The insured did not, within thirty days thereafter, notify the company of this exchange. In fact in his statement of February 13, 1956, he said that when he bought the Mercury he "changed companies" and "just dropped the insurance that I had with Eagle". By its letter dated July 11, 1955, the Eskew Insurance Agency, an agent for the Eagle Company, advised Gillotte that because of failure to remit premium, his policy would be canceled effective July 21, 1955, unless his remittance reached the company prior to that date.

On July 10, 1955, Gillotte, while driving the Mercury, collided with an automobile owned and driven by defendant Carol Wisdom, and in which the defendants Carmello and Margaret Pasqualino were passengers. Apparently company representatives learned about this accident. Mr. Joseph Bott, one of the company's attorneys and investigators, said he examined the statement by the insured which described the accident and named the automobile as a 1954 Mercury. Mr. Bott said the attorney for the Pasqualinos, who were claiming damages, showed such statement to him. In any case, in September, 1955, the company's agents and attorneys were investigating the accident. Gillotte was interviewed by a company investigator and described his automobile as a 1954 Mercury. The company obtained a copy of the Missouri Highway Patrol report of the accident so describing Gillotte's car. Thereafter, the company representatives conducted negotiations with Pasqualinos' attorneys in an effort to settle their claims for damages arising out of the accident and offered $2,000 in settlement. Gillotte took no part in such negotiations nor was he even advised such were being conducted. On September 29, 1955, the company secured a medical examination of the Pasqualinos by its physician.

On November 2, 1955, separate suits for damages arising out of the accident were filed against Gillotte by the three occupants of the other car. The petitions in each suit described Gillotte's automobile as a 1954 Mercury. Gillotte notified the company of these suits and its representatives filed answers therein, took depositions and in no way disclaimed liability until February 13, 1956, when it secured a "Non-waiver Agreement" from the insured. This document provided that "Any act, investigation, or defense, or offer of settlement made by Eagle Reciprocal Exchange on assured's behalf shall not be considered to be a waiver of any rights * * * nor shall this agreement be considered as a waiver of any rights of assured under said policy". We note that this agreement was made months after the company learned that Gillotte's car involved in the accident was the Mercury and not the Ford and after it had investigated the accident, had taken depositions, filed pleadings, secured medical examinations and made offers of settlement.

On April 11, 1956, the case of Margaret Pasqualino v. Gillotte came on for trial in the Circuit Court of Clay County Missouri. The company attorneys were there. Gil-

lotte and Gillotte's personal attorneys were there. Gillotte's attorneys in his behalf filed a written notice and demand that the company either accept liability under the policy and dismiss this declaratory judgment action, which had been filed March 22, 1956, or withdraw from participation in the trial. The company agents and attorneys did neither. Gillotte's attorneys left town and the company attorneys conducted the defense and trial, which resulted, on April 12, 1956, in a verdict and judgment in favor of Margaret Pasqualino and against Gillotte in the sum of $3,750. The company filed a motion for new trial on behalf of Gillotte and argued the same. It was overruled. No appeal was perfected and such judgment therefore became final on May 28, 1956. The other two suits are presently pending and undetermined.

We are first confronted with the question of jurisdiction. Although the appeal was taken to this court, counsel for both appellant and respondents now suggest that jurisdiction is in the Supreme Court.

We have jurisdiction unless " * * * the amount in dispute, exclusive of costs, exceeds the sum of seventy-five hundred dollars", Section 3, Art. V, 1945 Constitution, 2 V.A.M.S. Our Supreme Court has held many times and without exception, that: " * * * the fact of a value in excess of $7500 must affirmatively appear from the record and may not be surmised or conjectured". Cooper v. School District of Kansas City, 362 Mo. 49, 239 S.W.2d 509, 511; M. F. A. Mutual Ins. Co. v. Quinn, Mo., 251 S.W.2d 633, 634; Gillespie v. American Bus Lines, Mo., 246 S.W.2d 797, 798. The recital in plaintiff's brief that the amount involved, exclusive of costs, exceeds $7,500 is insufficient, M. F. A. Mutual Ins. Co. v. Quinn, supra.

In National Surety Corp. v. Burger's Estate, Mo., 183 S.W.2d 93, 95, plaintiff sought by declaratory judgment to be relieved on a $30,000 bond. The Supreme Court said: "The relief sought is not a money judgment, but other relief, to wit, to be dis-

charged from future liability under its said bond. Appellant concedes that it seeks to be relieved of an indefinite and contingent liability.

\* \* \* \* \* \*

"To give this court jurisdiction of an appeal, because of the amount in dispute, 'it must affirmatively appear from the record in the cause that the amount in dispute is in excess of $7,500.' Flynn v. Kinealy, 338 Mo. 522, 92 S.W.2d 671, 674. 'Speculation or conjecture as to the amount in dispute cannot be indulged in for the purpose of determining jurisdiction'. (citing cases). 'We are on firmer ground in holding, as we do, that the appellate jurisdiction of this court, on the ground of the amount in dispute, attaches when, and only when, the record of the trial court affirmatively shows that there is involved in the controversy, independent of all contingencies, an amount exceeding $7,500, exclusive of costs'. Stuart v. Stuart, 320 Mo. 486, 488, 8 S.W.2d 613, 614; Nies v. Stone, Mo.Sup., 108 S.W. 2d 349, 350. A mere chance that the amount in dispute may exceed $7,500 does not give this court jurisdiction. (citing cases)". Cotton v. Iowa Mutual Liability Ins. Co., 363 Mo. 400, 251 S.W.2d 246, is a suit for declaratory judgment by the insurance company under a $100,000 liability contract. The court held that the maximum amount of the liability under the policy did not place jurisdiction in the Supreme Court.

The petition in our instant case does not ask for a money judgment. It does allege that three suits arising out of the July 10, 1955 accident had been filed against the insured; that the suit by defendant Wisdom for property damage sought a $500 recovery; that the two other suits alleged damages for personal injuries, totalling $22,500, but contained no allegations as to the amount claimed in each suit. One of these suits, namely Margaret Pasqualino v. Gillotte, was reduced to a final judgment of $3,750. The record does not affirmatively show the exact amount claimed in the Carmello Pasqualino action. These allegations as to the other three lawsuits were

admitted by all defendants except Margaret Pasqualino, who set up her judgment of $3,750 as a counterclaim.

We believe jurisdiction in our case is with this court. Plaintiff does not seek a money judgment. The only amount of money involved in the judgment itself is $3,750, the amount of the allowed counterclaim. The record discloses definitely one other pending suit for $500, and a second suit in which an undisclosed amount is sought ($22,500, less the amount sued for by Margaret Pasqualino). In State ex rel. State Highway Commission v. Schade, 265 S.W.2d 383, 384, the Supreme Court said: "The record must show affirmatively that the amount in dispute exceeds $7,500, independent of all contingencies and speculation as to the amount in dispute, and a mere chance that the amount in dispute may exceed $7,500 is insufficient. (citing cases)".

We think the amounts, if any, that might finally be recovered in the other two suits are problematical, contingent and speculative. And as to those suits, the record positively shows only that one is for $500, and the other for an undisclosed amount ($22,500, less the undisclosed amount claimed in the adjudicated case). We cannot hold that this record shows affirmatively that the amount in dispute in the instant case exceeds $7,500. Therefore, jurisdiction is in the Court of Appeals.

In addition, the pleadings of the defendants in this declaratory action denied generally the company's entitlement to declaratory relief and set up waiver and estoppel. The facts as herein set forth were all found by the trial court and incorporated in its findings of fact. Such facts were really not disputed and we find there was substantial, competent evidence establishing them.

The trial court ruled that the company had (1) waived any defense it might have under the policy; (2) by its actions it was estopped to deny liability, and (3) it is obligated to defend Gillotte in any actions

arising out of the accident of July 10, 1955, and within the monetary policy limits pay any judgments rendered against him therein. The court also entered judgment for Margaret Pasqualino against the company on her counterclaim in the sum of $3,750, with interest thereon at 6 percent from May 28, 1956.

On appeal the company assigns three points of error. First, that the court erred in rendering the judgment on the ground that the automobile was covered by the policy. This assignment is a legal conclusion and does not particularize the alleged error. However, the vital element of this first assignment is included in the second, which alleges that there was no evidence of such conduct as would support a finding of waiver or estoppel.

We believe the controversies arising from the facts herein present issues ripe for determination and therefore are subject to a declaratory judgment. The situation here shows three areas in which plaintiff company may be liable, that is, liability generally arising out of the accident of July 10, 1955, potential liability in the two suits pending but undetermined, and liability to pay the final judgment already secured. Our Supreme Court in Jacobs v. Leggett, 295 S.W.2d 825, 834, approved and incorporated in its opinion the following from City of Joplin v. Jasper County, 349 Mo. 441, 161 S.W.2d 411, 413; "But, when it is attempted to be so used and a judicial declaration is sought the court must be presented with a justiciable controversy—one appropriate for judicial determination—a case admitting of specific relief by way of a decree or judgment conclusive in character and determinative of the issues involved. Aetna Life Ins. Co. of Hartford, Conn. v. Haworth, 300 U.S. 227, 57 S.Ct. 461, 81 L. Ed. 617, 108 A.L.R. 1000; Anderson, Declaratory Judgments, Sec. 8, p. 27; 16 Am. Jur., Sec. 46". Our case fits into these requirements.

It is quite clear that while this policy was personal to Gillotte, it did not

insure him while operating *any* automobile, but only against liability imposed by law resulting from the operation of the automobile described in the policy, or one to which the policy might be extended. When on May 8, 1955, the Ford was traded for the Mercury, all coverage as to the Ford was terminated. But such coverage was automatically transferred to the replacement—the Mercury—for a period of thirty days and would continue thereafter if, within the thirty day period, the company were notified of such replacement. Union Automobile Indemnity Ass'n v. Reimann, Mo. App., 171 S.W.2d 721, 725.

It is not disputed that Gillotte traded cars on May 8, 1955, and failed to notify the company of the replacement within thirty days as required, or before the accident of July 10, 1955.

While the policy does not expressly declare the consequence if timely notice was not given, the result seems obvious from the language of the policy contract. It is that unless notice be given, then coverage after expiration of the thirty day period would cease. Merchants Mutual Cas. Co. v. Lambert, 90 N.H. 507, 11 A.2d 361, 127 A.L.R. 483; Union Automobile Indemnity Ass'n v. Reimann, supra.

 Apparently all of the parties at the trial and on appeal so construed the contract. The real question, on the law and under the facts, before the trial court and here is whether or not the company by its actions and conduct waived its right to assert forfeiture and is estopped to assert noncompliance with the policy notice provisions as a defense. In 45 C.J.S. Insurance § 673, we find the following word description of waiver and estoppel: "The terms 'waiver' and 'estoppel' are frequently used as interchangeable in the law of insurance, implied waiver in particular being closely akin to, and usually involving elements of, estoppel. Technically, however, a distinction exists between the terms, and waiver, unlike estoppel, may arise from the act of the company only and without the insured having been misled to his injury".

One who asserts estoppel has the burden of establishing the facts upon which it rests by clear and satisfactory evidence. John Hancock Mutual Life Ins. Co. v. Dawson, Mo.App., 278 S.W.2d 57, 61; State ex rel. Richards v. Fidelity & Casualty Co. of N. Y., Mo.App., 82 S.W.2d 123, 128; 31 C.J.S. Estoppel, § 162, p. 457.

Appellant company says there was no evidence of waiver or estoppel and no consideration therefor. By asserting no consideration we presume appellant means that as to estoppel the insured's position was not prejudiced. The company cites cases which it claims supports such conclusion. In Rosenberg v. General Accident Fire & Life Assur. Co., Ltd., Mo.App., 246 S.W. 1009, it was held that waiver was inapplicable when the policy described premises other than those in which the burglary occurred. In Doerr v. National Fire Ins. Co., 315 Mo. 266, 285 S.W. 961, 54 A.L.R. 1336, the policy covered theft while the automobile was unattended, but locked. The court held the condition, namely that the automobile was to be locked when left unattended, was to be in a state of fulfillment at the time of the loss and was required so to be as a measure of protection against loss which was as far as the coverage extended. In Graham v. Gardner, Mo.App., 233 S.W.2d 797, 802, it was sought to extend coverage to an employee not named in the policy endorsement. In the opinion this court emphasized the distinction between a case where waiver or estoppel are invoked to prevent forfeiture and where it is attempted to broaden the contract as to a risk never covered by the policy. Estoppel may prevent forfeiture, but will not broaden or extend the contract. On page 802 of the opinion this court said: "Here the garnishee makes no claim of forfeiture of the policy; on the contrary, it is insisting upon the contract itself, and is insisting that by its terms it did not insure the risk in question. What is sought here is not to prevent a forfeiture, but to broaden the con-

tract of insurance so as to cover a risk it never covered by its terms. While a forfeiture of benefits contracted for may be waived, the general rule is that the doctrines of waiver and estoppel based upon the conduct of the insurer are not available to bring within the coverage of a policy risks not covered by its terms, or risks expressly excluded therefrom".

For waiver or estoppel to arise it seems to be essential, and rightly so, for the insurer to have knowledge of the facts upon which it could base forfeiture or deny coverage, but notwithstanding such knowledge fail to deny coverage, fail to assert forfeiture, and to go ahead and investigate and defend the claim without first taking a nonwaiver agreement. In Mistele v. Ogle, Mo., 293 S.W.2d 330, 334, our Supreme Court said: "It is defending an action with *knowledge* of noncoverage under a policy of liability insurance without a non-waiver or reservation of rights agreement that precludes the insurer from subsequently setting up the fact and defense. 29 Am. Jur. Sec. 878, p. 672; Annotations, 38 A. L.R.2d 1148, 81 A.L.R. 1326; 8 Appleman, Insurance Law, Secs. 4692–4694, pp. 45–70". To the same effect is the ruling by the Springfield Court of Appeals in Compton Heights Laundry Co. v. General A., F. & L. Assur. Corp., 195 Mo.App. 313, 190 S.W. 382. We quote from that opinion (at page 385): "The question in this case that involves the real gist of the controversy is that of the alleged waiver of the requirements of the rider. The provisions, of these liability policies are peculiar and are in a class to themselves, in that they carefully and explicitly reserve to the insurer the exclusive right to manage and control all controversies that arise by reason of accidents to the employ*es* of the insured, and they expressly prohibit any interference on the part of the insured. It is a well-known practice concerning all transactions to require of any one to take advantage of his rights at a proper time. * * * It must be remembered, in considering a case of this character, that the insured, if not

protected by the terms of his policy, should have a free hand to proceed, as soon as practical, in his own way. This right is as essential to the insured as are the provisions in the policy giving the insurer exclusive control of accidents covered by its policy.

\* \* \* \* \* \*

"Where, as in the case at bar, the testimony tends to prove that the insurer recognized an accident as covered by its policy and proceeded to act thereunder according to its terms, the insured is presumed to have been prejudiced by such conduct, and this is not a rebuttal presumption. Royle Mining Co. v. Fidelity & Casualty Co. of New York, 161 Mo.App. 185, 197, 142 S.W. 438.

"Under the well-established rules of law in this state governing the actions of an insurer in a case of this character, unquestionably there was sufficient testimony upon which to base the conclusion that defendant waived the provisions of its rider".

This court came to like conclusions in National Battery Co. v. Standard Acc. Ins. Co., 226 Mo.App. 351, 41 S.W.2d 599, and on page 604, said: "That the insurance company did voluntarily and unconditionally assume defense of the lawsuits and recognize its obligations so to do under the terms of the policy is conclusively established. This is a paramount factor, ignored by appellant, and is determinative of the case contrary to appellant's contention. So far as this record shows, defendant was in possession of all the facts and had all the knowledge which it now has, at the time it assumed liability, and by its conduct then elected its course, waived the question of delayed notice and the alleged breach by plaintiff of the provision of the contract in reference thereto, as well as the question of the liability being within the terms of the policy. Its subsequent disclaimer did not relieve it. Rieger v. London Guarantee & Accident Co., 202 Mo.App. 184, 211, 215 S.W. 920; Schusterman v. Fidelity-Phoenix Fire Ins. Co., Mo.App.,

253 S.W. 91, loc. cit. 95; Royle Mining Co. v. Fidelity & Casualty Co., 161 Mo.App. 185, 142 S.W. 438; Fairbanks Canning Co. v. London Guaranty & Accident Co., 154 Mo. App. 327, 133 S.W. 664; Cooley's Briefs on Insurance (2d Ed.) Vol. 5, p. 4534".

In Rieger v. London Guarantee & Accident Co., 202 Mo.App. 184, 215 S.W. 920, it was held that an employer's liability insurer which, after an accident to an employee, claimed by insured to be covered by the policy, permitted its physician to take part in treating the employee and undertook to defend the action, was estopped to deny liability on the ground that the particular employee was not covered by the policy.

In this case the only basis upon which the company claims it might have effectively asserted forfeiture and successfully denied liability was Gillotte's failure to notify it of the replacement of the Ford with the Mercury, and within thirty days after such replacement. There can be no question but that the company knew by September, 1955, that Gillotte had made such an exchange of cars and that the Mercury was the car involved in the July 10, 1955 accident. It neither required nor secured a nonwaiver agreement until February 13, 1956. In the meantime and without asserting its defense, it investigated the accident, had its doctors examine claimants, filed pleadings in the three suits, took depositions, negotiated for a settlement and finally refused to withdraw as defense attorneys in the case which was tried and after adverse verdict, filed a motion for new trial and argued same. Under these facts, we believe and hold that the company waived the forfeiture and was estopped to assert such defense.

That Gillotte's position in protecting himself from loss resulting from the accident and in defending the suits was prejudiced by the company's attitude in assuming the defense of the lawsuits is so apparent as to require little discussion. In Compton Heights L. Co. v. General A., F. & L.

Assur. Corp., supra, it was held that an insured, under such circumstances, was presumed to have been prejudiced and that such presumption was nonrebuttable. In our case the company for months took charge of the accident and the lawsuits arising therefrom, in all respects. Its actions in so doing amounted to an estoppel, which eroded away its potential defense.

■ Finally, the company claims the court erred in giving judgment to Margaret Pasqualino on her counterclaim. It asserts that one final judgment had already been entered in her cause of action; that entry of the judgment amounts to a relitigation of the same matters which were tried in the Circuit Court of Clay County, and that the whole matter is res judicata. We do not agree. Margaret Pasqualino's judgment is against Gillotte, the insured. If Gillotte's policy with Eagle covered the accident (and Eagle's attorney represented Gillotte at the trial) it is obligated to pay such final judgment. If it refuses to do so, and its action in bringing this declaratory judgment suit was a definite denial of liability, one of her methods of collection is to sue the company directly. Section 379.200, V.A.M.S. provides in part: "Upon the recovery of a final judgment * * * and if the judgment is not satisfied within thirty days after the date when it is rendered, the judgment creditor may proceed in equity against the defendant and the insurance company to reach and apply the insurance money to the satisfaction of the judgment". See also, Rutherford v. National Indemnity Co., D.C., 113 F.Supp. 640, 641; Haines v. Harrison, 357 Mo. 956, 211 S.W.2d 489, 492.

In our case the insurance company joined Margaret Pasqualino as a defendant and sought an adjudication by declaratory judgment that she had no legal claim against it. Section 509.420, V.A.M.S. requires that a pleader "* * * state as a counterclaim any claim, not the subject of a pending action, which at the time of filing the pleading the pleader has against any op-

posing party, if it arises out of the transaction or occurrences that is the subject-matter of the opposing party's claim * * *". The final judgment was properly pleaded as a counterclaim and since the company has been ruled estopped to assert its only claimed defense, was properly entered up as a judgment. It is fully apparent that the court was not twice litigating the same claim.

For all of the reasons herein stated, the judgment is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion of MAUGHMER, C., is adopted as the opinion of the court.

All concur.