216 F.Supp. 420 (1961)
The TRAVELERS INDEMNITY COMPANY, a corporation, Plaintiff,
v.
Thomas HARRIS, Jr., Lenos G. Cannon, Harry Singleton and Rose Mary Singleton, Defendants.
No. 60 C 344.
United States District Court E. D. Missouri, E. D.
October 3, 1961.
*421 John F. Evans, of Evans & Dixon, St. Louis, Mo., for plaintiff.
Alphonse Lynch, St. Louis, Mo., for defendant. Harris Merle L. Silverstein, Clayton, Mo., for defendants Cannon and Singleton.
HARPER, Chief Judge.
This is an action for a declaratory judgment to void an automobile liability policy of insurance issued by the plaintiff to the defendant, on the grounds that the defendant fraudulently procured the insurance contract by misrepresentations in his application.
Notwithstanding defendant's argument that this court is without jurisdiction, it seems clearly within the discretion of the Federal District Court to entertain the suit pursuant to 28 U.S.C. § 2201, which creates the declaratory judgment remedy, subject only to the existence of (1) a case or actual controversy, (2) within its jurisdiction, and (3) the filing of appropriate pleadings.
The existence of a case or controversy in the instant case is clear, in that plaintiff will have to defend suits by defendants Cannon and Singleton if they get judgments in their action against Harris, and, in the alternative, suit by Harris for losses and expenses, based on wrongful refusal to defend. Cases holding that there was a case or controversy in basically similar factual situations include Aetna Life Ins. Co. of Hartford, Conn. v. Martin, 8 Cir., 108 F.2d 824; New York Casualty Co. v. Lewellen, 8 Cir., 184 F.2d 891; and Maryland Casualty Co. v. Pacific Coal & Oil Company, 312 U.S. 270, 61 S.Ct. 510, 85 L.Ed. 826.
The declaration of rights and duties in reference to whether or not the policy is void ab initio is proper at this juncture to avoid a possible multiplicity of suits.
Nor is defendant's contention that plaintiff has an adequate remedy at law sufficiently persuasive to defeat jurisdiction. There are many cases in which Federal District Courts have entertained declaratory judgment actions under similar circumstances. Commercial Standard Ins. Co. v. Central Produce Company, D.C., 42 F.Supp. 31. Similarly there are many cases in which District Courts have retained jurisdiction even though actions had been commenced in the state courts. Maryland Casualty Company v. Tighe, D. C., 29 F.Supp. 69, affirmed 9 Cir., 115 F. 2d 297; General Accident, Fire & Life Assur. Company Limited, of Perth, Scotland v. Morgan, D.C., 30 F.Supp. 753.
It has also been said that a court may not refuse to assume jurisdiction in a declaratory judgment action on the grounds that another remedy is available or because another suit is pending in a state court, if the controversy between the parties will not necessarily be determined thereby. Brillhart v. Excess Insurance Co. of America, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620. The latter seems particularly applicable to the situation at hand. The insurer has not been made a party in either of the state court suits and its specific obligations will not be determined in those actions.
The basic facts here are as follows: Defendant Harris applied for an auto liability policy on February 2, 1960, during which transaction the questioned representations were made. The policy was issued by the plaintiff on February 10th. An accident occurred on February 16th which resulted in injuries to defendants Cannon and Singleton, and they filed separate suits as plaintiffs in the Circuit Court of the City of St. Louis on October 10, 1960. Plaintiff received the Retail Credit report on Harris somewhere between the 19th and 25th of February, and a report of the accident on the 24th of February. Somewhere between February 23rd and 25th, the record of violations was referred to plaintiff's Claims Department. It is not clear whether adjuster Quigg began routine investigation of the accident before or after notice of Harris' violations reached the Claims Department, however. Nevertheless, within ten days from the time he had begun the investigation, he was ordered to stop it, and run a check on Harris' traffic record. On April 8, 1960, Harris *422 was first notified that the insurance company was voiding the policy.
There are two main issues involved, each requiring a simultaneous weighing of both evidence and law. They are: (1) Was there such a fraudulent misrepresentation by Harris that plaintiff, Travelers, should be allowed to void the policy? (2) If the policy is otherwise voidable, did Travelers waive the defense by delay or other affirmative actions which would estop them from raising the defense in this action?
While the term "fraud" is used in many branches of the law, the restitutionary or contract sense is relevant here, and the definition of fraud in these areas generally encompasses (1) misrepresentation known to be such, (2) non-privileged non-disclosure, and (3) concealment. (Restatement of Contracts, Sec. 471, Restatement of Restitution, Sec. 8.) An additional requisite is that the misrepresentation must be of a material fact, and a misrepresentation is material "where (it) would be likely to affect the conduct of a reasonable man" (Restatement of Contracts, Sec. 470(2)). However, "It is not essential to constitute fraud (as defined in the Restatement of Contracts) that the mistake intended or expected shall be material. * * * It is enough that the mistake is intended or expected to induce either affirmative or negative conduct with respect to contractual relations." (Restatement of Contracts, Sec. 471, Comment C. (Emphasis added.))
Further, in order to be actionable, as to create a right of avoidance in the defrauded party, the misrepresentation must actually induce the complaining party's entry into the transaction. McNealy v. Bartlett, 123 Mo.App., 58, 99 S.W. 767. However, it need not be the sole inducement, at least not in Missouri. Bledsoe v. Letson, Mo.App., 215 S.W. 513.
It should also be noted that a misrepresentation that may be fraud "includes all possible affirmative conduct that amounts to an assertion of fact." (Restatement of Contracts, Sec. 471, Comment d.) In short, misrepresentation need not be oral, and this may have some specific application to the consequences of signing the policy by Harris. I have not gone into the legal consequences of the "signing" because there is sufficient evidence of fraud without it.
What actually transpired when Harris applied for the insurance is crucially important in establishing fraud. Item #9 is the key part of the application, and reads as follows:
"Have you or any other person named in item 8 been convicted of a moving traffic violation as a result of operating any private passenger type automobile during the past 5 years' period preceding the date of this application?"
Had this question been read verbatim to Harris, or had he read it himself, the "no" answer appearing on the application, or at least the "no" answer that Rogers testified Harris gave, would be a clear case of fraud in view of the actual violation. But it is not this easy since there is conflict as to what actually did happen. Rogers, the "producer" of the insurance, the man who took Harris' application, testified that he asked Harris if he had any violations in the past five years. Rogers admittedly did not read from the application verbatim, but insisted, and repeated in his testimony, that he asked Harris if he or his wife had any moving traffic violations in the past five years.
Harris, on the other hand, stated in his depositions and in testimony at the trial that Rogers asked only if he had any moving violations and that he did not put any time limit on it. Harris testified that he admitted having such violations but that "he was a little vague on the dates." The implication was that since, under his version, Rogers put no time limit on it, there was little inducement to think of the exact dates, and his admission of having such violations was an ample answer. Harris also testified that he signed the policy without reading it.
The testimony of Rogers and Harris is hopelessly contradictory, and very important, *423 as is, therefore, their credibility. If Rogers is to be believed, there is a pretty clear case of fraud, otherwise, a rather difficult case.
Harris, in his March 27th deposition, said that to the best of his knowledge he had been involved in no moving traffic violations since 1948, and doggedly adhered to that position, while in fact, he had at least four traffic violations. It seems obvious that Harris was intentionally concealing the violations when he made his application.
Materiality and reliance on misrepresentation are interrelated. As mentioned before, a misrepresentation is material by the Restatement definition "where (it) would be likely to affect the conduct of a reasonable man." Had the company or the underwriter known of the four actual violations totalling ten points, and particularly of the drunken driving charge, no policy would have been issued.
Defendant's efforts to distinguish the cases of Minich v. MFA Mutual Ins. Co., Mo.App., 325 S.W.2d 56, and Gooch v. Motors Ins. Co., Mo.App., 312 S.W.2d 605, are without avail. Both involved misrepresentations in applications for insurance. The court in Minich, supra, l. c. 57, said: "`A material misrepresentation made by an applicant for insurance, in reliance on which a policy is issued to him, renders the policy voidable * * *.' * * * This is true whether such misrepresentation be made intentionally or through mistake and in good faith." l. c. 58: "He is bound, in law, to have known the contents of the instrument he signed, whether he read it or did not read it."
Did plaintiff waive its defense, or is it estopped from asserting it because of delay or other affirmative action? The Restatement of Contracts, Sec. 483, in discussing elements of waiver or estoppel, indicates that:
"The power of avoidance for fraud or misrepresentation is lost if after acquiring knowledge thereof, the injured party unreasonably delays manifesting to the other party his intention to avoid the transaction." (Emphasis added.)
And, the Restatement of Restitution, Sec. 64, similarly states:
"An unreasonable delay in manifesting an avoidance of a transaction after acquisition of knowledge of the facts terminates the power of recession for fraud or mistake * * * if the interests of the transferee or of a third person are harmed or were likely to be harmed by such delay. * * *" (Emphasis added.)
Plaintiff probably received knowledge of the misrepresentation under scrutiny on the 19th of February, or surely sometime before the 25th of February, and Harris was notified on the 8th of April. Thus, somewhere between 42 and 48 days elapsed from the time of knowledge and the notice of recission or voidance of the policy and of refusal to protect the "insured" on his accident of February 16th.
What actually occurred between February 19th, the first possible date of the knowledge of the misrepresentation and the 8th of April, when Harris was notified of voidance, is important. Somewhere between the 19th and 24th or 25th, plaintiff received knowledge of the violations through the Retail Credit report mailed on the 18th. Hamilton, the underwriter, says that when he got the report, the claim registration for the accident had already been given to the Claim Department, and, "I don't think anyone was particularly aware one way or the other at the time we gave the registration whether the reports (Retail Credit's) had ever come or not. The two records would be entirely separate." As mentioned before, because of the close proximity of receipt of the accident report and the Retail Credit report, it is impossible to tell whether the adjuster had begun investigation of the accident while the company had knowledge of the possible misrepresentation, that is, it is difficult to tell whether or not there is any evidence that the company "assumed the defense" with knowledge of its own defense.
*424 A lapse of almost two and a half years between time of acquisition of knowledge of possible defense and time of asserting it did not preclude the insurer from setting up the defense in Mistele v. Ogle, Mo., 293 S.W.2d 330, and similarly, a lapse of four and a half months did not preclude a voidance in another case, Klim v. Johnson, 16 Ill.App.2d 484, 148 N.E. 2d 828, but, a delay of only 46 days gave rise to a waiver or estoppel in Compton Heights Laundry Co. v. General Accident, Fire & Life Assur. Corp., Limited, of Perth, Scotland, 195 Mo.App. 313, 190 S.W. 382. Thus, our knowledge that 42, 48 or 49 days lapsed in the instant case is meaningless in a vacuum.
The case of Keys v. Pace, 358 Mich. 74, 99 N.W.2d 547, presented a situation where the insurer should have been aware of a defense 78 days before actually asserting it in an attempt to void, but he was not estopped to so assert when actual, positive knowledge of the defense was acquired, because at that point he acted promptly. And, where conflicts in information, and the withholding thereof over a two-year period precluded positive knowledge by the defendant of the defense of non-coverage, he was allowed to assert that defense when the knowledge did become positive. Mistele v. Ogle, supra. Also, in the case of Kearns Coal Corp. v. United States Fidelity & Guaranty Co., 2 Cir., 118 F.2d 33, the insurer had assumed the defense of an action against the insured but was allowed to withdraw when, at the pretrial examination, facts of defense came out which gave the company a grounds of avoidance.
In the instant case, if it is possible to say that plaintiff had assumed defense of the insured because of the preliminary investigations by Quigg, it seems that the actual, positive knowledge of the defense of misrepresentation in the petition, was not available until after Quigg was put on investigation of Harris' traffic record. The period of delay after actual knowledge was less than the 42 to 48 days quoted above. Receipt of Retail Credit's report was not treated by the company as actual and positive knowledge or else Quigg would not have been ordered to do further investigation.
In Hesselberg v. Aetna Life Ins. Co., 8 Cir., 75 F.2d 490, although three months had elapsed between the time the insurer had learned of the defense and asserted it, it was held that there was no waiver, stating, "Appellee was entitled to a reasonable period for investigation."
Similarly, where information of a misrepresentation was received approximately two months before the suit to void the court held that the defense was not waived by the delay, saying: "The cancellation of a policy for misrepresentation is a serious matter, both to the company and to the insured; and, although good faith requires that the company act promptly upon discovering the falsity of a representation, it is entitled to a reasonable time within which to investigate the matter and to determine what course to pursue." Fountain & Herrington v. Mutual Life Ins. Co. of New York, 4 Cir., 55 F.2d 120. Thomas v. Prudential Ins. Co. of America, 4 Cir., 104 F.2d 480.
The investigation in the instant case was complicated and delayed by the close proximity of the receipt of the report of violations and accident claim. It appears that as soon as plaintiff realized that it might have a case of misrepresentation, it called its investigator off the accident investigation and proceeded to ascertain whether or not there was a good ground for voidance of the policy. After a reasonable investigation and deliberation upon this rather serious matter, it attempted to void the policy on the 8th.
Just how far an insurer can go in investigating and defending an action against its insured before it is held to have waived the right to assert defenses known throughout its actions, is difficult to ascertain. In a 9th Circuit Court of Appeals case the insurer had undertaken the defense and filed an answer in a personal injury action against its insured, but the court said the insurer was not estopped from asserting non-liability on *425 grounds of non-coverage of the policy, because the insured had not been prejudiced, in that the case had never reached trial. Journal Pub. Co. v. General Casualty Co., 210 F.2d 202.
In Missouri Managerial Corp. v. Pasqualino, Mo.App., 323 S.W.2d 244, the insured not only waited three months to deny liability after acquiring facts sufficient for a defense of non-liability, but also investigated the accident, had doctors examine clients, took depositions, and negotiated a settlement, as well as filing pleadings. And, where the insurer took complete charge of a federal court suit against the insured with knowledge of facts giving notice of non-liability, these defenses were waived. Consolidated Elec. Co-op. v. Employers Mutual Liability Ins. Co., D.C., 106 F.Supp. 322.
In the latter two cases even though a waiver was found, it is to be noted that the insurer's control of and involvement in the suit had been far greater in the instant case. Also, in the Journal Pub., supra, there was greater involvement than in the instant case, and in that case there was no waiver. In the case before this court, the insured has filed no answer, made no attempt to settle, taken no depositions, etc.
An insured must be prejudiced by delay before a waiver will arise. This is in accord with the Restatement of Contracts, Sec. 483(2) b and c, and the case law bears out the statement as well. Several Missouri cases seem to raise a conclusive presumption of prejudice when the insurer recognizes the accident as covered by the policy and proceed to act thereunder. Several state that there is an irrebuttable presumption of prejudice where the insurer defends the suit. But the key seems to be just what constitutes a defense of a suit such that a waiver will arise. Is a simple investigation as in the instant case sufficient? An examination of the Missouri cases on this point indicates that it is not.
Thus, in Consolidated Electric Co-op. v. Employers Mutual Liability Ins. Co., D.C., 106 F.Supp. 322, the general rule is stated, l. c. 331: "[A]ll potential objections an insurer may have based on its policy coverage of a particular injury will be waived, if the insurer undertakes the defense of a lawsuit against the insured. * * *" But, it further appears that in this case the company "took complete charge of the action without reservation." Cases cited in Consolidated for the same general principle also qualify the term defense, or expand upon it.
Royle Mining Co. v. Fidelity & Casualty Co., 161 Mo.App. 185, 142 S.W. 438, involved a complete defense of the action. National Battery Co. v. Standard Acc. Ins. Co., 226 Mo.App. 351, 41 S.W.2d 599, held that waiver resulted when the insurance company undertook to defend and attempt to settle the cases.
In Fairbanks Canning Co. v. London Acc. & Guaranty Co., 154 Mo.App. 327, 133 S.W. 664, "Defendant treated the matter as one for which it was ultimately liable. * * * The writs and other papers were immediately turned over to the defendant, who took charge and control and assumed the expense of the defense." Defendant in that case took deposition, transferred one case to the Federal District Court, etc.
In Cowell v. Employers Indemnity Co., 326 Mo. 1103, 34 S.W.2d 705, l. c. 710, the court said: "It stands admitted by the pleadings therefore that Western Indemnity Company assumed the defense of the suit * * * pursuant to the terms of the policy, preventing him (the insured) from conducting his own defense or making any settlement."
In sum, it appears in all the cases cited for the proposition that there is an irrebuttable presumption of prejudice when the insurer undertakes defense of an action against the insured; there was evidence of much more activity on the part of the insurer than in the instant case. No Missouri case was found where a mere investigation of the accident, as we have in the case before this court, held to be such a defense as would constitute a waiver.
*426 As was said in the Pasqualino case, supra, 323 S.W.2d l. c. 250: "For waiver or estoppel to arise it seems to be essential, and rightly so, for the insurer to have knowledge of the facts upon which it could base forfeiture or deny coverage, but notwithstanding such knowledge fail to deny coverage, fail to assert forfeiture, and to go ahead and investigate and defend the claim without first taking a non-waiver agreement."
There being no waiver or estoppel against the insurance company in this case, the plaintiff is entitled to judgment. The attorney for the plaintiff will prepare the proper order to be entered by the court.